JiPLOTKIN, Judge.
This appeal considers the extent of evidence establishing causation and breach of a physician’s standard of care sufficient to defeat a motion for summary judgment in a medical malpractice action arising from the prescription of phenobarbital during pregnancy.
Kristal Serigne, the minor child of Kimmie and Lisa Serigne, is diagnosed with cerebral palsy, congenital microcephaly, failure to thrive, developmental delay, and seizure disorder. Plaintiffs Kimmie and Lisa Serigne individually and on behalf of Kristal sought damages from Lisa’s obstetrician Dr. Frances B. Ivker, who prescribed phenobarbital for Lisa during her pregnancy; from Dr. Ivker’s insurer; from several companies that manufacture phenobarbital; and from the insurers of these companies. The trial judge granted summary judgment dismissing the claims against the manufacturer because the manufacturer had fulfilled its duty to warn the prescribing physician. A medical review panel concluded that the evidence did not support the claim that Dr. Ivker failed to meet the applicable standard of care. Plaintiffs appeal the granting of summary | ¿judgment dismissing their medical malpractice claim against Dr. Ivker. We reverse and remand for further proceedings.
Appellate courts review summary judgments de novo using the same considerations as trial courts. See, e.g., Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; see also Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Louisiana Code of Civil Procedure article 966(B) provides in part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
The evidence supporting the motion must be closely scrutinized while opposing evidence is indulgently treated. See, e.g., Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.1993). All evidence and inferences drawn must be construed in the light most favorable to the party opposing the motion. Schroeder, supra, at 345. A motion for summary judgment may not substitute for a trial on the merits, see Oller v. Sharp Electric, Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir.), writ denied, 457 So.2d 1194 (La.1984), and may not dispense with a case that is difficult to prove, see Holmes v. Pottharst, 557 So.2d 1024, 1026 (La.App. 4th Cir.1990).
A plaintiff in a medical malpractice action must prove that the applicable standard of care was violated by a physician and that this violation caused injury to the plaintiff. La. R.S. 9:2794(A). In response to plaintiff’s motion for rehearing, the trial judge noted that plaintiff had failed to obtain a statement by any expert that Kristal’s condition was caused by the ingestion of phenobarbital by Lisa when she was pregnant. Appellee contends that the trial judge correctly granted summary judgment because appellant has not provided any expert who will testify | gthat Dr. Ivker violated the appropriate standard of care. Specifically, appellee urges that a conclusory statement by appellant’s expert Dr. Blaylock, who is not an obstetrician, is insufficient to raise a genuine issue of material fact as to whether Dr. Ivker breached the standard of care.
Appellant provides the affidavit of Dr. Paul Blaylock, a licensed physician in Oregon and Washington with specializations in emergency and legal medicine, which states that in his opinion Dr. Ivker violated the standard of *1337 care by prescribing phenobarbital to a pregnant patient. Assuming without ruling that this affidavit is valueless, we find from a review of the record that summary judgment was improperly granted because genuine issues of material fact exist.
It is uneontested that Dr. Ivker prescribed phenobarbital for Lisa during her pregnancy and that Kristal was born significantly impaired. The teratogenicity of phenobarbital and the etiology of Kristal’s disorder are disputed.
Regarding teratogenicity, Dr. Yves Lacas-sie stated in his deposition that administering phenobarbital (as well as many other teratogens) to a pregnant woman might cause a vascular anomaly in a developing child. According to Dr. Lacassie the state of development at which phenobarbital was administered is significant; it would make a difference whether Lisa was two or four months pregnant when she began taking phenobarbital. Dr. Lacassie stated that, because organogenesis was complete after four months, teratogens such as anticonvulsants could be dangerous in the first trimester. Dr. Jonelle Brackett McAllister in her deposition stated that the teratogenicity of anti-convulsant medications has not been proven although there was a higher than normal incidence of cardiac and craniofacial anomalies in the children of epileptic mothers who ingested anticonvulsant medicines during pregnancy.
URegarding etiology, Dr. McAllister stated that in her opinion Kristal’s condition could not have been caused by phenobarbital. Dr. Lacassie stated that in his opinion Kristal suffered from an unspecified genetic disorder and that phenobarbital was not the cause of her condition (although he could not be certain). Dr. Lacassie stated that he could be more certain after searching a database of symptoms of genetic disorders and after Kristal was examined for vascular abnormalities.
The stage in Kristal’s development at which Lisa began to ingest phenobarbital is not clear from the record. Dr. Lacassie stated in his deposition that Lisa began taking the drug when she was four months pregnant, although he stated in his evaluation that she began taking phenobarbital in her second month. Dr. Brackett testified that Lisa began taking the drug when she was between two and half and three months pregnant. According to Dr. Ivker, Lisa first came to her office when she was eleven weeks pregnant and Dr. Ivker waited to prescribe phenobarbital until week fourteen. According to Lisa, she was prescribed phenobarbital on her first visit to Dr. Ivker.
The appropriateness of prescribing phenobarbital under the circumstances is also disputed. Lisa stated in an affidavit that she had been free from seizures for four years prior to her pregnancy. Dr. Ivker stated in her deposition that Lisa said she suffered from epilepsy from age four and that her most recent seizure was in the preceding September. Dr. Daniel J. Trahant stated in his deposition that he had examined Lisa and that in his opinion she did not suffer from a seizure disorder. Dr. Bryan Bertucci stated in his deposition that he would not prescribe 15phenobarbital under the circumstances of this case without first consulting a neurologist and obtaining an EEG.[1]
Although the teratogenic effect of phenobarbital is disputed and the etiology of Kristal’s disorders unproven at this time, we find that when the evidence on these issues is construed favorably for the appellant and scrutinized closely against appellee, whether phenobarbital is a teratogen that caused Kristal’s condition is a genuine issue of material fact. The developmental timing of phenobarbital ingestion by the child’s mother is also a genuine issue of material fact.
Appellees invoke the decision of this Court in Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4th Cir.1987) to support the summary judgment. Because in Fortenberry the physician denied ever administering the drug to the patient, Fortenberry is not dispositive.
*1338 Accordingly, the judgment granting summary judgment in favor of appellee is reversed and the case remanded for further proceedings. Costs of the appeal are assessed against appellee.

REVERSED AND REMANDED.

leLANDRIEU, J., concurs in the result.
CIACCIO, J., dissents with reasons.

. Appellee contends that Dr. Bertucci as a family practitioner is not qualified to testify regarding whether an obstetrician breached the standard of care. In fact, Dr. Bertucci declined to testify further on this issue because of his respect for Dr. Ivker. We do not agree, however, that the alleged act of negligence raises issues peculiar to the specialization of obstetrics. The standard of care is the same with respect to referral for neurological evaluation by both obstetricians and family practitioners. Cf. Soteropulos v. Schmidt, 556 So.2d 276, 280 (La.App. 4th Cir.1990).