798 So.2d 60 (2001)
J. Elise SHELTON
v.
STANDARD/700 ASSOCIATES, A Louisiana Joint Venture Standard/700 Associates, Inc., Smith, Bright & Standard, L.L.C. and Baker Group Associates, Inc.
No. 2001-C-0587.
Supreme Court of Louisiana.
October 16, 2001.
Rehearing Denied November 16, 2001.
*62 Robert L. Hackett, New Orleans, Counsel for Applicant.
Justin L. Hawks, Thomas G. Buck, George C. Aucoin, Jr., Blue Williams, Metarie, Counsel for Respondent.
KNOLL, Judge.[*]
This writ concerns whether the sellers of a condominium were properly granted summary judgment against the buyer, where the buyer alleged fraud in the inducement of a contract of sale waiving all warranties and rights to sue in redhibition. Finding that there is an absence of factual support to show fraud, which is essential to the buyer's claim, we affirm.

FACTS AND PROCEDURAL HISTORY
On September 4, 1996, the plaintiff, J. Elise Shelton, purchased a condominium from defendant Standard/700 Associates. The condominium, designated as Unit 617, is located on the top floor of a building at 700 South Peters Street in the City of New Orleans. The condominium was sold "as is where is," without any warranties or right to sue in redhibition.
Two months after the sale, on or about November 13 or 14 of 1996, water began to leak through the ceiling of the condominium, causing damage to the interior of the condominium and plaintiffs personal property.[1] After several failed attempts by defendant Standard/700 Associates to repair the roof of the building, on April 17, 1997, plaintiff filed suit.[2] In her petition for damages, plaintiff alleged the leaks were caused by a swimming pool, a hot tub, and planters located on the roof of the building. Seeking recission of the sale, plaintiff further alleged the condominium contained a redhibitory defect insofar as the leaks rendered the condominium useless or, alternatively, its use so inconvenient that plaintiff would not have bought the condominium had she known of the defect.
*63 In a supplemental and amending petition, plaintiff pled fraud and inducement, alleging that defendants had knowledge of the condition of the roof, but intentionally concealed this information from plaintiff prior to purchase.[3] Plaintiff specifically alleged that, prior to the act of sale, defendant Ms. Margaret Aldon Lovelace Guichard, the sales agent for defendant Standard/700 Associates, "unequivocally vouched for the soundness of the roof of the subject condominium complex" and stated there had been no previous leaks.
After answering plaintiff's original petition and amended petition, defendants moved for summary judgment, contending that plaintiff effectively waived the warranty against redhibitory defects when plaintiff entered the contract of sale containing the "as is where is" clause. Defendants relied on the following language contained in the act of sale:
NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE UNIT DESCRIBED HEREIN IS SOLD AND PURCHASED "AS IS WHERE IS", WITHOUT ANY WARRANTY OR REPRESENTATION WHATSOEVER WITH RESPECT TO THE CONDITION OR REMAINING USEFUL LIFE OF SUCH CONDOMINIUM UNIT OR WITH RESPECT TO ANY OF THE COMMON ELEMENTS OF THE CONDOMINIUM, OR ANY OF THEIR COMPONENTS OR PARTS OR CONTENTS, AND WITHOUT WARRANTY WHATSOEVER WITH RESPECT TO THE FITNESS OF ANY CONDOMINIUM UNIT OF THE COMMON ELEMENTS FOR ANY PARTICULAR OR GENERAL USE OR PURPOSE AND NO REPRESENTATION OR WARRANTIES WITH RESPECT TO ANY OF THE FOREGOING ARE MADE, ALL OF THEM BEING EXPRESSLY DISCLAIMED.
PURCHASER HEREBY WAIVES ANY RIGHT TO SUE IN REDHIBITION OR FOR RETURN OR REDUCTION OF THE PURCHASE PRICE OR ANY PART THEREOF AS A RESULT OF THE CONDITION OF THE UNIT OR UNITS DESCRIBED HEREIN OR THE CONDOMINIUM.
After a hearing, the trial court granted defendants' motion.[4] On appeal, the Fourth Circuit affirmed. Shelton v. Standard/700 Associates, XXXX-XXXX (La.App. 4th Cir.1/31/01), 778 So.2d 1265. In reaching its holding, the court of appeal relied on two findings. First, the court of appeal found no defect existed in the condominium at the time of delivery. Consequently, the court of appeal determined there was no redhibitory defect in the condominium. LSA-C.C. art. 2530.[5] Second, the court of appeal found that plaintiff waived her right to sue for redhibitory defects.

DISCUSSION
The issue before us does not concern the "as is where is" waiver of warranties plaintiff signed. It is the allegation of fraud that prompted this court to grant this *64 writ,[6] as fraud in the inducement of a contract cannot be waived.
Plaintiff can only obtain relief from the harsh consequences of the waiver she signed if she can show fraud in the inducement of the contract. As such, our discussion will address the body of law pertaining to fraud in the inducement of a contract of sale.
It is clear that a seller warrants his buyer against redhibitory defects, or vices, in the thing sold. LSA-C.C. art. 2520. It is equally clear, however, that this warranty may be excluded or limited per LSA-C.C. art. 2548, which provides, in pertinent part:
The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer.
While an exclusion or limitation of the warranty against redhibitory defects is usually effective, LSA-C.C. art. 2548 further provides that "[a] buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have." Under this article, an otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the civil code, upon the buyer. Thus, although the warranty against redhibitory defects may be excluded or limited, a seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers. See Roby Motors Co. v. Price, 173 So. 793, 796 (La.App. 2nd Cir.1937). Indeed, such a contract would be contra bonos mores and unenforceable.
A contract is formed by the consent of the parties. LSA-C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LSA-C.C. art. 1953. "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." LSA-C.C. art. 1955.
Nevertheless, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. LSA-C.C. art. 1954.
In pleading fraud, the circumstances constituting fraud must be alleged with particularity. LSA-C.C.P. art. 856. However, fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. art. 1957.
In sum, there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.
Appellate courts review summary judgments de novo. Doerr v. Mobil Oil *65 Corp., XXXX-XXXX (La.12/19/00), 774 So.2d 119, 136. It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion for summary judgment does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2).
In support of their motion for summary judgment, defendants submitted several documents, including a document entitled "Statements of Uncontested Material Facts," which essentially sets forth the waiver provisions in the sales documents; a copy of the Public Offering Statement for 700 South Peters Condominium; a copy of the Agreement to Purchase; a copy of the Act of Sale; and a copy of plaintiff's deposition. In opposition to summary judgment, plaintiff also submitted several documents, including a copy of her deposition; repair and maintenance records evidencing the extent and amount of repairs made on the roof before and after the date of sale; two affidavits executed by plaintiff; an affidavit executed by Ms. Carita Boutte; and the deposition of Ms. Guichard.
After carefully studying the documents plaintiff filed in opposition to summary judgment, we find that plaintiff failed to produce factual support sufficient to establish that she would be able to prove her allegation of fraud at trial. Notably, plaintiff herself conceded in deposition that defendant Ms. Guichard, the sales agent for defendant Standard/700 Associates, who represented defendants throughout the sales negotiations, and who in fact managed the condominium building, may never have known about any prior problems involving leaks in the roof of the condominium building. This admission certainly belies plaintiff's allegation of fraud because it underscores defendants' lack of intent to obtain an unjust advantage or to cause damage or inconvenience to plaintiff. In her deposition, plaintiff further stated that if Ms. Guichard was unaware of the prior leak problems, surely "somebody there knew about it." This statement is pure speculation which falls far short of plaintiff's burden on summary judgment to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. Moreover, the repair and maintenance records which plaintiff relies on fail to raise a genuine issue of material fact regarding fraud. Indeed, the records evidencing the extent and amount of repairs made on the roof after the date of sale are irrelevant to plaintiff's fraud allegation. The records evidencing the extent and amount of repairs made on the roof before the date of sale are relevant, but such repairs were so infrequent and inconsequential that these records also fail to raise a genuine issue of material fact regarding plaintiff's fraud allegation.[7]
*66 Furthermore, the three affidavits submitted by plaintiff in opposition to summary judgement fail to raise a genuine issue of material fact regarding fraud. The first affidavit executed by plaintiff merely recounts and expounds on allegations made in plaintiffs original petition and amended petition.[8] The second affidavit executed by plaintiff, referred to as a supplemental affidavit, contains irrelevant information regarding plaintiffs continuing problems with the leaky roof. The affidavit of Ms. Carita Boutte merely corroborates an alleged conversation between plaintiff and Ms. Guichard, wherein Ms. Guichard allegedly told plaintiff that "there had never been any reported leak in the roof of 700 S. Peters."
Finally, Ms. Guichard's deposition fails to support plaintiffs allegation of fraud. Indeed, Ms. Guichard denies having any knowledge of any roof leaks prior to September 4, 1996, the date of the act of sale.[9]
*67 In conclusion, we find plaintiffs conjectural allegations of fraud are too speculative. Plaintiff has failed to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. Summary judgment was properly granted in defendants' favor. Accordingly, the judgment of the court of appeal is affirmed.
AFFIRMED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
Summary judgment is inappropriate in this case because material issues of fact exist as to plaintiffs allegations of fraud. Summary judgment is not intended to be used as a vehicle to circumvent a trial on the merits, and it may not be used to dispense with a case that is difficult to prove. Serigne v. Ivker, 95-1538 (La.App. 4 Cir. 2/15/96), 669 So.2d 1335.
In this case, defendants vouched for the soundness of the roof and denied that there had been any previous leaks prior to the Act of Sale. Yet, it is apparent from the record that defendants had experienced problems with the roof. In fact, in the three years prior to plaintiffs purchase, defendant spent in excess of $5,000.00 on roof repairs, the last of which occurred eight months before plaintiffs purchase. Further, despite the "as is where is" warranty, defendants spent several months (January of 1997 through March of 1997) attempting to repair the roof after plaintiff moved into the condominium.
Because I believe that plaintiff should have been given the opportunity to prove to a trier of fact that defendants misrepresented or suppressed the truth about the problems with the roof, I respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] Plaintiff alleges subsequent leaks occurred on or about December 5, 1996; on or about December 26, 1996 through January 6, 1997; on January 25, 1997; on February 12, 1997; on April 11, 1997 through April 13, 1997. Plaintiff further alleges water continues to leak through the ceiling of the condominium.
[2] In her original petition for damages, plaintiff also named as defendants the joint venturers of Standard/700 Associates, including Standard/700 Associates, Inc.; Smith, Bright & Standard, L.L.C.; and Baker Group Associates, Inc.
[3] Plaintiff also named two additional defendants in her supplemental and amending petition, including Ms. Margaret Aldon Lovelace Guichard, the sales agent for Standard/700 Associates, and 700 S. Peters Owners Association.
[4] The trial judge issued no reasons for judgment.
[5] LSA-C.C. art. 2530 provides:

The warranty against redhibitory defects covers only defects that exist at the time of delivery. The defect shall be presumed to have existed at the time of delivery if it appears within three days from that time.
[6] Shelton v. Standard/700 Associates, XXXX-XXXX (La.05/04/01), 791 So.2d 643.
[7] During the three years before the date of sale, approximately $5,000.00 was spent on roof repairs. On January 10, 1996, nearly eight months prior to the act of sale, $1,125.00 was paid to Top to Bottom Roofing Co. to "repair existing roof, install 50 feet of wall flashing" and to "repair decking and flat roof."
[8] In her affidavit, plaintiff, in relevant part, states:

3. On at least one occasion, affiant requested of Margaret Alden Lovelace Guichard information as to whether there was any evidence of roof problems or roof leaks of any kind;
4. Affiant was told by Margaret Alden Lovelace Guichard that there had never been any reported leak in the roof of 700 S. Peters;
5. Pursuant to formal request for production of documents, affiant has discovered that there were roof leaks as evidenced by [the repair and maintenance records produced by defendants] and that the information as to these leaks was withheld by Margaret Alden Lovelace Guichard;
6. At the time the subject inquiry as to roof leaks was made, affiant was in the company of her aunt, Carita Boutte, and the discussion as to roof leaks was witnessed by said person.
[9] In her deposition, Ms. Guichard offered the following testimony:

Q. When you showed the unit to the [plaintiff] the first time, the second time, or through the whole transaction leading up to the sale, was there any discussion of the soundness of the roof or any history of leaks in unit 617?
A. Not that I recall.
. . . .
Q. Did you have any knowledge, even hearsay knowledge of any leak from the roof of 700 South Peters prior to the sale of unit 617 on September 4, 1996?
A. I'm not sure if this came up after their leak occurred or before.
Q. Okay.
A. But this would have been prior to the sale though. So, not that I recall. No.
Q. So what came up?
A. In the process of figuring out what was going on in their unit one of our maintenance people, Tommy Moore is his name, told me there was a leak around the ceiling fan of 619 and they hadthat's the unit down the hallnot down the hall, but kind of in the middle of the building that had a leak in its ceiling. And that he hadit took him awhile to find that leak because it traveled down from one area to another....
Q. So Tommy Moore found that leak prior to the actual sale on September 4, 1996 is your recollection?
A. No. Tommy told me about the leak. I don't know that Tommy found it. He told me about it after the [plaintiff's] leak occurred. I don't know if he knew about it before the act of sale. I didn't know about it before the act of sale that I can recall.
Q. Did you ever have any problem with water penetrating the area of the roof around planters prior to September 4, 1996?
A. Around which planters?
Q. On the roof. Any planter on the roof.
A. Not to my knowledge.
Q. Did you ever have any problem with the Jacuzzi leakage on the roof or penetrating the roof around the area of the Jacuzzi prior to September 4, 1996?
A. No.
Q. Did you ever have any problem with a leak penetrating the area of the roof around the pool prior to September 4, 1996?
A. Not that I can recall.
. . . .
Q .... do you have any other information given to you or discovered personally by you concerning a leak in the roof of 700 South Peters?
A. No.
Q. That's the only one you know of?
A. Yes.
See Guichard deposition, TR. at 135-142.