848 So.2d 660 (2003)
Randall MARSHALL
v.
FIRST BANK & TRUST and First National Bank of Commerce.
No. 2002-CA-2450.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 2003.
Robert J. Young, III, Michael G. Morales, Young, Richaud & Myers, New Orleans, LA, for Plaintiff/Appellant.
Gregory J. St. Angelo, August J. LaNasa, Philip J. LaNasa, La Nasa, St. Angelo & La Nasa, L.L.C., New Orleans, LA, for Defendant/Appellee.
Stephen Guy deLaup, S. Guy deLaup, APLC, Metairie, LA, for Defendant/Appellee, Cheryl Jennings.
*661 Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge LEON A. CANNIZZARO, JR.
PATRICIA RIVET MURRAY, Judge.
This is a customer's suit against a bank for damages allegedly resulting from the bank's failure to honor the customer's request to stop payment on the bank's cashier's check. The customer appeals the trial court's judgment granting summary judgment in favor of the bank. We affirm.

FACTS
On April 27, 1997, Randall Marshall redeemed various certificates of deposit at First Bank & Trust (FBT), and requested and received a cashier's check for $113,988.28 made payable solely to him. Mr. Marshall placed the check in his home desk drawer. Shortly thereafter, he and his wife, Cheryl Jennings Marshall ("Ms. Jennings"), physically separated and commenced divorce proceedings. On June 25, 1997, Mr. Marshall's housekeeper informed him that Ms. Jennings had taken the cashier's check from his desk drawer and absconded with it.
The following day, Mr. Marshall went to FBT and requested that a "stop payment" order be issued because the cashier's check was missing, lost, or stolen. Following the instructions an FBT employee gave him, Mr. Marshall completed an "Indemnity Agreement for Missing Instrument," had it notarized, and returned it to FBT. According to Mr. Marshall, an FBT employee instructed him to return in ninety days at which time the bank would issue him a replacement check and assured him that the original cashier's check would be flagged and that it would not be paid or clear the bank.[1]
On July 5, 1997, Ms. Jennings endorsed the cashier's check for deposit into a joint checking account that she maintained with Mr. Marshall at First National Bank of Commerce ("FNBC"). Although Ms. Jennings endorsed only her name to the check, which was payable to Mr. Marshall, FNBC supplied Mr. Marshall's missing endorsement.[2] On July 7, 1997, FBT accepted the cashier's check from FNBC and credited FNBC's account for the amount of the cashier's check, $113,988.28. On that same date, Ms. Jennings withdrew $57,000 from the FNBC joint account. On September 18, 1997, she withdrew the remaining money in that account, which totaled $57,059.28. Mr. Marshall claims these actions were done without his knowledge and that during that time period the FNBC joint account statements were being mailed to a closed post office box.
Meanwhile, on October 7, 1997, Mr. Marshall returned to FBT to obtain a replacement check since the ninety-day waiting period had elapsed. Although FBT issued a replacement cashier's check, on October 9, 1997, FBT verbally informed Mr. Marshall that the replacement check could not be converted, endorsed, or otherwise cashed because FBT had placed a stop payment order. On October 10, 1997, FBT returned the original cashier's check *662 to FNBC by correspondence stating it was "lacking proper endorsement" and that its customer claimed he did not deposit this item. On October 21, 1997, FNBC responded that the account in which the cashier's check was deposited was a joint account entitled Randall L. Marshall "or" Cheryl J. Marshall and that the check was endorsed by Cheryl Marshall and deposited into that account. The instant lawsuit followed.
In this suit, Mr. Marshall asserts essentially two claims against FBT: a Uniform Commercial Code claim for failure to honor his request to stop payment on the cashier's check and a detrimental reliance claim under La. C.C. art.1967. Granting FBT's motion for summary judgment, the trial court found that FBT was contractually obligated to pay the cashier's check presented by FNBC despite Mr. Marshall's claim that the check was lost or stolen, reasoning:
Under the Uniform Commercial Code, FBT was justified in not stopping payment on the cashier's check despite Mr. Marshall's request because he breached the Indemnity Agreement by indorsing the cashier's check. Mr. Marshall had signed a depositor's agreement with FNBC appointing FNBC a mandatory of Mr. Marshall such that it could supply his missing indorsement on any item deposited into his joint checking account, provided that the item was made payable to either of the two joint account holders. This court previously upheld the language of that depositor's agreement and granted summary judgment to FNBC on that basis. Thus, the court finds that since Mr. Marshall's signature was supplied via a lawfully executed Power of Attorney, or contract of mandate, Mr. Marshall has no claim, under law, against FBT.
The trial court likewise rejected Mr. Marshall's detrimental reliance claim, reasoning:
Absent from the plaintiff's claims is the "detriment" component. As part of the community property settlement with his ex-wife, Cheryl Jennings Marshall, the plaintiff received full benefit of the proceeds of the cashier's check and used said proceeds as valuable consideration in the settlement of Cheryl Jennings Marshall's community property claim. Accordingly, this court is of the opinion that Mr. Marshall did not lose the value of the cashier's check because that was the value he received in his divorce settlement in which he allowed his ex-wife to keep "all movables currently in her possession." Furthermore, if plaintiff were to receive an additional payment from FBT, he would be unjustly enriched, in contravention to La. C.C. art. 2298. Thus, the court finds that Mr. Marshall did not suffer any detriment. He has already [been] paid the money the money he now seeks from FBT.[3]
This appeal followed.

DISCUSSION
On appeal, the standard of review of a trial court's decision granting summary judgment is de novo. Shelton v. Standard/700 Associates, XXXX-XXXX, p. 5 (La.10/16/01), 798 So.2d 60, 64-65; Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 27 (La.12/19/00), 774 So.2d 119, 136; Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. We ask the same questions as the trial court asked; namely: whether there is any genuine *663 issue of material fact, and whether the mover-appellee is entitled to judgment as a matter of law. In answering these questions, we are guided by the Legislature's admonition that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action" and that "[t]he procedure is favored and shall be construed to accomplish these ends." La. C. Civ. Pro. art. 966(A)(2).
Based on our de novo review of the record, we find the trial court correctly concluded that FBT was entitled to summary judgment and thus affirm the trial court. In so doing, we separately address each of Mr. Marshall's two claims.

UCC CLAIM
The applicable Louisiana UCC provision that governs lost, destroyed, or stolen cashier's checks is La. R.S. 10:3-312, which provides:[4]
A claimant [i.e., one who claims the right to receive the amount of a cashier's check that was lost, destroyed, or stolen] may assert a claim to the amount of a [cashier's] check by a communication to the obligated [issuer] bank describing the check with reasonable certainty and requesting payment of the amount of the check, if (i) the claimant is ... the remitter or payee of a cashier's check ... (ii) the communication contains or is accompanied by a declaration of loss of the claimant with respect to the check, (iii) the communication is received at a time and in a manner affording the bank a reasonable time to act on it before the check is paid, and (iv) the claimant provides reasonable identification if requested by the obligated bank. Delivery of a declaration of loss is a warranty of the truth of the statements made in the declaration.
La. R.S. 10:3-312(b)(emphasis supplied).
A "declaration of loss" is further defined to mean:
[A] written statement, made under penalty of perjury, to the effect that (i) the declarer lost possession of a check, (ii) the declarer is ... the remitter or payee of the check, in the case of a cashier's check ... (iii) the loss of possession was not the result of a transfer by the declarer or a lawful seizure, and (iv) the declarer cannot reasonably obtain possession of the check because the check was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
La. R.S. 10:3-312(a)(3). Section 312 further provides that a claim asserted in compliance with the above rules is subject to the following additional rules:
(1) The claim becomes enforceable at the later of (i) the time the claim is asserted, or (ii) the ninetieth day following the date of the check, in the case of a cashier's check....
(2) Until the claim becomes enforceable, it has no legal effect and the obligated bank may pay the check.... Payment to a person entitled to enforce the check discharges all liability of the obligated bank with respect to the check.
La. R.S. 10:3-312(b).
Illustrating the operation of this section, the official comments to La. R.S. 10:3-312 *664 provide several examples; the one most pertinent to the instant case is as follows:
3. A claim asserted under subsection (b) does not have any legal effect, however, until the date it becomes enforceable, which cannot be earlier than 90 days after the date of a cashier's check.... Thus, if a lost check is presented for payment within the 90-day period, the bank may pay a person entitled to enforce the check without regard to the claim and is discharged of all liability with respect to the check. This ensures the continued utility of cashier's checks ... as cash equivalents. Virtually all such checks are presented for payment within 90 days.
In this case, Mr. Marshall acknowledges that under La. R.S. 10:3-312(b) FBT had the right to pay a person entitled to enforce the cashier's check at any time before the ninety-day period elapsed. However, he contends that Ms. Jennings was not such a person. He emphasizes that he put FBT on notice on June 26, 1997, that Ms. Jennings had stolen the cashier's check and that FBT had actual notice that she was not a person authorized to enforce the check. He further claims that she was not his mandatory and had no authority to endorse the cashier's check, which was made payable solely to him. He also argues that the trial court erred in relying on his breach of the Indemnification Agreement as a basis to enforce the cashier's check. He contends that when he reported the cashier's check missing and signed the Indemnification Agreement, the check was not endorsed, and Ms. Jennings subsequent endorsement cannot be attributed to him.
FBT counters that FNBC was a party entitled to enforce the check and that its payment of the cashier's check to FNBC discharged its liability. FBT points out that FNBC's right to enforce the check, as the trial court held, was based on the language of Mr. Marshall's depositor's agreement with FNBC. The depositor's agreement appointed FNBC as Mr. Marshall's mandatory such that it could supply his missing endorsement on any item deposited into his joint checking account, provided the item was payable to either of the two joint account holders. FBT argues that it was legally bound to pay FNBC. FBT further argues that if it had not paid FNBC, then FNBC could have brought an action against FBT, and FBT would have been entitled to seek indemnity from Mr. Marshall under the terms of the Indemnity Agreement.
We find FBT's arguments persuasive. Although Mr. Marshall did not endorse the cashier's check directly, he did so indirectly by maintaining the joint account with his estranged wife and by authorizing FNBC to supply his missing endorsement for deposits into that joint account. Moreover, he, in effect, obtained payment of the check as a result of it being deposited into the FNBC joint account that he and Ms. Jennings co-owned. Also, because the check was endorsed and deposited into that joint account, Mr. Marshall violated the Indemnification Agreement he signed when he requested that payment be stopped.[5] The purpose of indemnification *665 agreements in general, as FBT points out, is to avoid the risk of having to make double payment. That is exactly the result Mr. Marshall seeks to obtain. However, as the trial court correctly recognized, if Mr. Marshall were to obtain an additional payment from FBT, he would be unjustly enriched in violation of La. C.C. art. 2298, which provides that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."
In sum, we find that FNBC was a party entitled to enforce the check and that FBT's payment of the check to FNBC discharged its obligation with respect to the check.

DETRIMENTAL RELIANCE
Mr. Marshall alternatively asserts that his main cause of action against FBT is based on detrimental reliance. The concept of detrimental reliance is codified in La. C.C. art.1967, which provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
La. C.C. art.1967.
The trial court found that Mr. Marshall suffered no "detriment" because of the Consent Judgment between him and Ms. Jennings. Mr. Marshall contends that this was incorrect because at the time he entered into the Consent Judgment he did not have possession of the cashier's check or its value and that this was a "detriment."
We cannot say that the trial court's factual finding that Mr. Marshall did not suffer a detriment was manifestly erroneous. Mr. Marshall not only received the full benefit of the value of the check in the Consent Judgment, but also effectively received payment by the deposit of that check into his joint account at FNBC. As explained above, to allow Mr. Marshall to recover again from FBT would result in an unjust enrichment. The trial court correctly rejected Mr. Marshall's detrimental reliance claim.

DECREE
For the foregoing reasons, we affirm the trial court judgment.
AFFIRMED.
NOTES
[1] For purposes of its motion for summary judgment, FBT admitted its employees told Mr. Marshall that payment would be stopped on the cashier's check.
[2] FNBC supplied the missing endorsement pursuant to its depositor's agreement with Mr. Marshall, which authorized it to do so for any item that was payable to either spouse that was deposited into their joint account. Particularly, the rules governing joint "or" accounts provide, inter alia, that "[a]ny item made payable to one or more of the owners may be deposited into the account by us [FNBC] or by anyone else, and we have the right to supply the endorsement for deposit to the account."
[3] The trial court quotes the Consent Judgment, which provides that "petitioner, Cheryl Jennings Marshall, shall receive as her share of community property all movables currently in her possession."
[4] Mr. Marshall cites La. R.S. 10:3-411 for the proposition that FBT was not obligated to pay the cashier's check to FNBC. That provision, however, governs disputes over a bank's refusal to pay a cashier's check. The instant case involves a dispute over FBT's payment of the cashier's check. The applicable provision, therefore, is La. R.S. 10:3-312.
[5] Under that agreement, Mr. Marshall agreed to the following:

[T]hat said instrument was not endorsed, negotiated, sold, assigned, transferred or deposited under any agreement or subjected to any hypothecation, lien or pledge, or in any other manner disposed of by separate assignment or otherwise, and the undersigned agree that if the said instrument is located, it will not be endorsed or negotiated in any manner but will be immediately delivered to First Bank and Trust for cancellation without value.
In consideration of the issuance of a replacement instrument or the refund of the amount involved to the undersigned, the undersigned hereby indemnifies and agrees to save and hold First Bank and Trust harmless against all claims, damages, actions, proceedings, demands, losses and liability, whether groundless or otherwise, including all expenses of or on account of the issuance of a replacement instrument or the refund of the amount thereof.