# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 05-726


**DEBBIE B. STEWART**

**VERSUS**

**RHEEM MANUFACTURING CO., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 904557
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Michael G. Sullivan, and J. David Painter, Judges.


**REVERSED AND REMANDED.**

**Henry Adolph Bernard, Jr.**
**William Martin Hudson, III**
**Lawrence Edward Marino**
**Kimberly M. Bernard**
**Oats & Hudson**
**100 E. Vermillion St., #400**
**Lafayette, LA 70501**
**(337) 233-1100**
**Counsel for Plaintiffs/Appellants:**
**Ryan Stewart**
**Kelly Stewart Shreve**
**Kyra Stewart**
**Debbie B. Stewart**

**Michael Gonzales Durand**
**Timothy John McNamara**
**Brent Gerard Sonnier**
**Onebane Law Firm**
**P. O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**Counsel for Defendant/Appellee:**
**Duracell International, Inc.**

**L. Albert Forrest**
**Attorney at Law**
**P. O. Box 10087**
**New Iberia, LA 70562-0087**
**(337) 364-2343**
**Counsel for Defendants/Appellees:**
**Glenn Keith Menard**
**State Farm Fire & Casualty Co.**

**Paul Joseph Hebert**
**Ottinger Hebert**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**Counsel for Defendant/Appellee:**
**Keith Menard**

**Ralph Shelton Hubbard, III**
**Attorney at Law**
**601 Poydras Street, Suite 2775**
**New Orleans, LA 70130**
**(504) 568-1990**
**Counsel for Defendant/Appellee:**
**Travelers Indemnity Company of Illinois**

**J. Reginald Keogh**
**Stephen R. Wilson**
**Keogh, Cox, & Wilson**
**P. O. Box 1151**
**Baton Rouge, LA 70802-0000**
**(225) 383-3795**
**Counsel for Defendant/Appellee:**
**Rheem Manufacturing Co.**

**Bruce C Waltzer**
**Joel Waltzer**
**Attorneys at Law**
**14349 Chef Menteur Hwy., Suite D**
**New Orleans, LA 70129**
**(504) 254-4400**
**Counsel for Intervenor/Appellee:**
**Joel R. Waltzer**
**Bruce C Waltzer**

**Edgar Dean Gankendorff**
**Provosty, Sadler, et al**
**650 Poydras St., Suite 2700**
**New Orleans, LA 70130**
**(504) 410-2795**
**Counsel for Plaintiffs/Appellants:**
**Debbie B. Stewart**
**Kelly Stewart Shreve**
**Ryan Stewart**
**Kyra Stewart**

**Michael Wayne Landry**
**Law Offices of Harold Toscano**
**One Lakeshore Dr., Suite 1710**
**Lake Charles, LA 70629**
**(337) 497-0039**
**Counsel for Defendant/Appellee:**
**Duracell International, Inc.**

**Stephen M. Whitlow**
**Attorney at Law**
**P. O. Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**Counsel for Defendant/Appellee:**
**Rheem Manufacturing Co.**

**Celeste D. Elliott**
**Lugenbuhl, Wheaton, Peck, Rankin, & Hubbard**
**601 Poydras, #2275**
**New Orleans, LA 70130-6027**
**(504) 568-1990**
**Counsel for Defendant/Appellee:**
**Travelers Indemnity Co. of IL**

**Carolyn Bateman Hennesy**
**Attorney at Law**
**601 Poydras St., #2775**
**New Orleans, LA 70130**
**(504) 568-1990**
**Counsel for Defendant/Appellee:**
**Travelers Indemnity Co. of IL**

**Lawrence Jerome Goldstein**
**Attorney at Law**
**1020 St. Claude Ave.**
**New Orleans, LA 70116-2304**
**(504) 522-6714**
**Counsel for Plaintiffs/Appellants:**
**Debbie B. Stewart**
**Ryan Stewart**
**Kelly Stewart Shreve**
**Kyra Stewart**

**SAUNDERS, Judge.**

Occupants of a leased home brought suit to recover damages for exposure to polychlorinated biphenyls (hereinafter referred to as "PCBs") occurring when a capacitor in the home's air conditioning unit ruptured. The homeowner, unit manufacturer, and capacitor manufacturer filed motions for summary judgment. The homeowner's motion was denied and the manufacturers' motions were granted on the basis of federal preemption. Plaintiffs appealed the granting of those motions. We reverse.

**FACTS AND PROCEDURAL HISTORY**

Debbie Stewart and her three children were living in a home leased from Keith Menard on May 20, 1990. On that date, the Stewarts smelled a burning odor and noticed that the home's air conditioning unit, manufactured by Rheem Manufacturing Company (hereinafter referred to as "Rheem"), was not functioning properly. A serviceman was called and he determined that the unit's capacitor, manufactured by defendant Duracell's predecessor in interest Mallory Capacitor Company (hereinafter referred to as "Duracell"), ruptured and burned releasing PCBs. The Stewarts breathed the PCBs and allegedly suffered adverse health effects as a result.

The Stewarts filed suit and Duracell, Rheem, and Mr. Menard filed motions for summary judgment. The trial court denied Mr. Menard's motion but granted those by Duracell and Rheem concluding that federal law, namely the Toxic Substances Control Act (TSCA), preempted the Stewarts' claims as to those defendants. The Stewarts then filed this devolutive appeal.

**ASSIGNMENTS OF ERROR**

    1)    The trial court erred in finding that the TSCA preempts the Stewarts' suit for personal injuries under the Louisiana Products Liability Act (LPLA).

2)     The trial court erred in finding that the leaking capacitor at issue qualified as "totally enclosed" under the TSCA regulations.

**STANDARD OF REVIEW**

Appellate courts conduct a *de novo* review of rulings on motions for summary judgment. *Alfred Palma, Inc., v. Crane Servs. Inc.,* 03-0614 (La.App. 3 Cir. 11/5/03), 858 So.2d 772. "It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Id*. at 774 (quoting *Shelton v. Standard/700 Assocs.*, 01-507, p. 5 (La. 10/16/01), 798 So.2d 60, 64-65); La.Code Civ.P. art. 966.

**ASSIGNMENT OF ERROR NUMBER ONE**

In this assignment, plaintiffs argue that the trial court erred in finding that their claims against Duracell and Rheem are preempted by the TSCA. The preemptive language upon which the trial court based its ruling is found in 15 U.S.C.A. 2617. That statute provides that:

> (a) Effect on State law
>
> **(1)** Except as provided in paragraph (2), nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical substance, mixture, or article containing a chemical substance or mixture.
>
> **(2)** Except as provided in subsection (b) of this section--
>
> **(A)** if the Administrator requires by a rule promulgated under <u>section 2603</u> of this title the testing of a chemical substance or mixture, no State or political subdivision may, after the effective date of such rule, establish or continue in effect a requirement for the testing of such substance or mixture for purposes similar to those for which testing is required under such rule; and

2

**(B)** if the Administrator prescribes a rule or order under section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title) which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, or an article containing such substance or mixture, and which is designed to protect against such risk unless such requirement (i) is identical to the requirement prescribed by the Administrator, (ii) is adopted under the authority of the Clean Air Act [42 U.S.C.A. § 7401 et seq.] or any other Federal law, or (iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures).

(b) Exemption

Upon application of a State or political subdivision of a State the Administrator may by rule exempt from subsection (a)(2) of this section, under such conditions as may be prescribed in such rule, a requirement of such State or political subdivision designed to protect against a risk of injury to health or the environment associated with a chemical substance, mixture, or article containing a chemical substance or mixture if--

**(1)** compliance with the requirement would not cause the manufacturing, processing, distribution in commerce, or use of the substance, mixture, or article to be in violation of the applicable requirement under this chapter described in subsection (a)(2) of this section, and

**(2)** the State or political subdivision requirement (A) provides a significantly higher degree of protection from such risk than the requirement under this chapter described in subsection (a)(2) of this section and (B) does not, through difficulties in marketing, distribution, or other factors, unduly burden interstate commerce.

Because this case does not involve creation of testing requirements, 15 U.S.C.A. 2617(a)(2)(A) is inapplicable. Accordingly, preemption must be based upon 15 U.S.C.A. 2617(a)(2)(B), which requires that two conditions be satisfied. The first is that there be a regulation imposed by the Environmental Protection Agency (EPA) that binds defendants. 15 U.S.C.A. 2617(a)(2)(B). The second condition is that the state action constitutes a non-exempt requirement designed to protect against a risk of injury.

Plaintiffs argue that, because there was no requirement that PCBs be used in the capacitor, the first condition is not satisfied. We agree that the first condition is not satisfied, albeit for different reasons. The trial court noted that, while their manufacture was banned in 1976, PCBs could be distributed if done so in a totally enclosed manner and deemed this to be a rule or order under 15 U.S.C.A. 2605(e)(2)(B). A totally enclosed manner is defined by 15 U.S.C.A. 2605(e)(2)(C) as "any manner which will ensure that any exposure of human beings or the environment to a polychlorinated biphenyl will be insignificant as determined by the Administrator by rule." 15 U.S.C.A. 2605(e)(2)(C). Significant exposure is defined as:

> any exposure of human beings or the environment to PCBs, as measured or detected by any scientifically acceptable analytical method, may be significant, depending on such factors as the quantity of PCBs involved in the exposure, the likelihood of exposure to humans and the environment, and the effect of exposure. For purposes of determining which PCB Items are totally enclosed, pursuant to section 6(e)(2)(C) of TSCA, since exposure to such Items may be significant, the Administrator further finds that a totally enclosed manner is a manner which results in no exposure to humans or the environment to PCBs.

4

40 C.F.R. 761.20. A reading of these statutes indicates that the EPA regulates the permissible risk of exposure to PCBs, not the specific manner in which that risk is minimized. There are no requirements, such as design or use of particular materials, provided in the regulations. The lack of such language indicates that the act does not seek to regulate these considerations, leaving that task to the states. Accordingly, we conclude that preemption in that regard is not intended.

Rather, if, despite the lack of language on the issue, these statutes are construed as regulating the same behavior covered by the LPLA, they must also be deemed to be in harmony with that same act. Indeed, the TSCA specifically allows a state to prohibit the use of PCBs. If a state may prohibit their use, it must also be allowed to govern their permissible use given the lack of specific federal regulations on the subject.

We believe that Congress recognized a serious problem and attempted to remedy it in an economically feasible manner without abrogating traditional state powers. Federal lawmakers, recognizing the extremely harmful effect PCBs have on humans and the environment, banned their manufacture. These effects, however, were weighed against the economic realities facing those who had already manufactured PCBs and a balance was struck. The previously manufactured PCBs could be distributed but only in a manner that would not allow them to be exposed to humans or the environment. While the legislature attempted to avoid an excessively onerous financial burden on those who previously manufactured these chemicals, it clearly sought the elimination of the risk of PCB exposure. No time limit was placed upon this protection.

The trial court concluded that the intent of the act was not to hold manufacturers indefinitely liable. It was further determined that the fact that the capacitor did not leak for twelve years equates to compliance with the totally enclosed requirement. While we do not hold it was intended that PCB containing items outlast the great pyramids, we believe that it is reasonable to expect that such component parts should not leak for the life of the unit into which they are incorporated. This interpretation is supported by the definitions of significant risk and totally enclosed as well as the permissible state ban on PCB usage. The part at issue here leaked and exposed the Stewarts and the environment to PCBs. This is precisely the type of injury the TSCA seeks to avoid. That act, however, does not specifically provide for the means of accomplishing that end. Those means, therefore, must be governed by the LPLA. Accordingly, we find that plaintiffs' claims are not preempted and reverse the trial court's judgment. Because of this finding, plaintiffs' second assignment of error is rendered moot at this stage of the proceedings.

**CONCLUSION**

The judgment of the trial court is reversed and the case is remanded. Costs of this appeal are assessed to defendants.

**REVERSED AND REMANDED.**