NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-605


CHARLES CLEMENT, ET UX.

VERSUS

DANIEL LACOMBE

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2006-10071-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

AFFIRMED.


Rodney M. Rabalais
P.O. Box 447
Marksville, LA 70512
(318) 253-4622
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Charles Clement and Julie Clement

Ronald Glen Beard
1412 Centre Court, Suite 201
P.O. Box 12982
Alexandria, LA 71315
(318) 445-5648
COUNSEL FOR DEFENDANT/APPELLEE:
    Daniel Lacombe

**COOKS, Judge.**

The Appellants, Charles and Julie Clement, appeal the district court's grant of a motion for summary judgment in favor of the Appellee, Daniel Lacombe. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

In 2005, Charles and Julie Clement were in the process of building a new home. To that end, they hired Daniel Lacombe to install wooden flooring on a concrete slab. The wooden flooring was to be provided by the Clements, and was to have a thickness of three-quarter (3/4) inch.

According to Mr. Lacombe, he prepped the flooring area, tested the concrete for moisture, and applied a three-quarter (3/4) inch CDX plywood underlayment for the sub-floor. The Clements discovered they could not get 3/4 inch wood flooring without waiting for a lengthy period, and instead purchased wood flooring that was five-sixteenths (5/16) inch thick. Apparently, realizing the much thinner wood flooring would likely leave a space between the finished wood floor level and the base boards, Chuck Clement, with the assistance of some friends, installed another layer of one-quarter (1/4) inch lauan plywood sub-flooring. This was done out of the presence of Mr. Lacombe and without his knowledge.

After this was done, Mr. Lacombe was then informed by the Clements that they did not purchase the finished wood flooring with three-quarter (3/4) inch thickness, but rather purchased wood flooring that was five-sixteenths (5/16) inch thick. Mr. Lacombe stated he "told [Ms. Clement the 5/16 inch wood flooring] was sort of thin to be putting it down," but she told him to do so regardless. Mr. Lacombe installed the wood flooring as instructed.

A few weeks later, Mr. Lacombe was contacted by the general contractor, Larry

Bordelon, that the wood flooring had begun to buckle. According to Mr. Lacombe, he went to the house, and in the presence of the Clements, removed a portion of the flooring and determined it was the 1/4 inch plywood installed by Mr. Clement and his friends that was coming up in several areas because it was not nailed down properly. Mr. Lacombe stated he offered to help repair the problem for "around a Hundred, Two Hundred Dollars," to which Mr. Clement responded "I'll let you know." He was not contacted again by the Clements.

Instead, several months later, the Clements filed suit against Mr. Lacombe alleging "improper installation" and failure to follow the manufacturer's instructions. Mr. Lacombe filed declinatory and dilatory exceptions requesting that the Clements specify any defect in workmanship or deviation from the manufacturer's instructions for any alleged damage caused by Lacombe. The Clements then filed a supplemental and amending petition wherein they defined "improper installation" as moisture content was not checked prior to installation and moisture had entered the wood sub-flooring which was the direct cause of the buckling of the wood floor.

Mr. Lacombe filed a motion for summary judgment contending there was no genuine issue of material fact as to whether Mr. Lacombe's installation of the wooden floor fell below the standard of care required in the installation of the wood flooring product supplied by the Clements. The motion was supported by an affidavit and exhibits from an expert, Philip Beard, a civil engineer, and an affidavit from Larry Bordelon, the general contractor in this case.

After several continuances, a hearing was set. The day before the hearing the Clements filed a motion requesting an additional fifteen (15) days to file necessary oppositions to the motion for summary judgment. Although the trial court granted the request for additional time, no opposition was filed by the Clements. Following

a hearing on the motion, the trial court granted Mr. Lacombe's motion for summary judgment.

A few days later, the Clements filed a Motion for New Trial contending the judgment was contrary to the law and evidence. No new affidavits or evidence was presented by the Clements. At the conclusion of the hearing on the motion for new trial, the Clements requested additional time to submit an opposing affidavit. Counsel for Mr. Lacombe opposed any additional time. The trial court gave the Clements until January 18, 2010 to file an expert affidavit. It was not until January 27, 2010 that the Clements filed an affidavit from Darren Rabalais, who worked as a floor installer. The trial court eventually rendered written reasons finding the evidence submitted by Mr. Lacombe was "overwhelming and conclusive." Thus, finding the granting of the motion for summary judgment was not contrary to the law and the evidence, the motion for new trial was denied. This appeal followed.

**ANALYSIS**

The standard of review for motions for summary judgment is well established. This court, while addressing the applicable standard in *Spell v. Mallett, Inc.*, 06-1477, pp. 4-5 (La.App. 3 Cir. 5/2/07), 957 So.2d 262, 265, stated the following:

> It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. *Palma, Inc., v. Crane Servs. Inc.*, 03-614 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774 *quoting Shelton v. Standard 700/Associates*, 01-587, p. 5 (La.10/16/01), 798 So.2d 60, 64-65; La.Code Civ.P. art. 966.

Louisiana Code of Civil Procedure Article 966 was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art 966(A)(2).

In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings. It reads as follows:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense but rather point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The amended article places the initial burden of proof on the mover of the motion for summary judgment. If the mover meets this initial burden, the burden of proof then shifts to the nonmoving party that has the burden of proof on this particular issue at trial. This nonmoving party then must put forth evidence that shows he or she will be able to meet that burden at trial. If the nonmoving party cannot, then the motion for summary judgment should be granted. Maraist & Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999).

In order to defeat Mr. Lacombe's motion for summary judgment, the Clements had to establish there was a genuine issue of material fact as to whether Mr. Lacombe improperly installed the wood flooring. Shortly after the hearing on the motion for new trial, the Clements introduced the affidavit of Darren Rabalais, who had experience installing wood floors. Mr. Rabalais contended the installation by Mr. Lacombe was improper because the underlayment upon which the wood floor was placed was secured with staples rather that screws. Mr. Rabalais maintains the flooring should have been screwed down.

Mr. Rabalais's allegation was strongly disputed by Mr. Lacombe's expert, Phillip Beard, who was a Consulting Engineer with a degree in Civil Engineering. Mr. Beard's affidavit provided detailed methodology and specifically addressed the

allegations of improper installation. Mr. Beard inspected the floor twice and reviewed the pleadings and depositions before reaching his conclusions. He noted the attachment of the wood flooring to the sub-floor was a standard flooring "T" nails attachment using a special nailing mechanism. Mr. Beard concluded that the sub-flooring installation and subsequent finished wood flooring installation by Mr. Lacombe was performed in accordance with the standard practice of the wood flooring industry. Mr. Beard's report did not reference any use of staples by Mr. Lacombe. Mr. Beard also stated he observed no water or moisture during his inspections.

An affidavit from Larry Bordelon, the general contractor, was also submitted into the record. Mr. Bordelon specifically noted he did not observe or detect the presence of any moisture. Mr. Bordelon concluded that Mr. Lacombe's installation of the sub-flooring and finished wood flooring was performed correctly.

In his deposition testimony, Mr. Lacombe did not mention the use of any staples. He explained that he nailed down the wood flooring. He also specifically stated the sub-floor that was installed by Mr. Clement and his friends was improper and was the cause of the buckling.

The trial court reviewed all the evidence submitted in the record by Mr. Lacombe along with the affidavit of Mr. Rabalais. It concluded the evidence submitted by Mr. Lacombe was "overwhelming and conclusive," and that the affidavit of Mr. Rabalais was insufficient to create a genuine issue of material fact or to establish that the granting of the motion for summary judgment was contrary to the law and the evidence. After a thorough review of the record, we agree.

The law is clear that when a motion for summary judgment is made and supported, "an adverse party may not rest on the mere allegations or denials of his

pleadings." La.Code Civ.P. art. 967(B); *Douglass v. Easton*, 06-1404 (La.App. 3 Cir. 3/7/07), 953 So.2d 157, *writ denied*, 07-650 (La. 5/11/07), 955 So.2d 1282. Rather, his response must set forth specific facts showing a genuine issue for trial. Mr. Lacombe carried his burden of proof on the motion for summary judgment; thus, the burden shifted to the Clements to set forth specific facts to properly oppose defendant's motion. They failed to do so, and the trial court properly granted the motion for summary judgment.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.

**AFFIRMED.**

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**