868 So.2d 228 (2004)
Davy P. LABORDE, Jr. and Lisa Marie Laborde
v.
Quentin D. DASTUGUE, Penny Matherne Dastugue, Jack Lehman Sternberg, Glynis Elizabeth Schmolke d/b/a S.H. Bremen Company, Tommy Crane and Tommy Crane, Inc.
No. 2003-CA-1491.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 2004.
Rehearing Denied March 16, 2004.
*230 Davy P. Laborde, Law Firm of Davy P. Laborde, New Orleans, LA, for Plaintiffs/Appellants, Davy P. Laborde, Jr. and Lisa Marie Laborde.
Lura Lisa Wall, The Wall Law Firm, River Ridge, LA, for Defendants/Appellees, Tommy Crane, Inc. and St. Paul Fire and Marine Insurance Company.
Richard P. Richter, Christopher C. Chocheles, Terri B. Loughlin, Sher Garner Cahill Richter Klein Mcalister & Hilbert, L.L.C., New Orleans, LA, for Defendants/Appellees, Quentin D. Dastugue and Penny Matherne Dastugue.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO, JR.)
LEON A. CANNIZZARO, JR., Judge.
This case involves an appeal by the plaintiffs from the trial court's granting of summary judgments in favor of certain defendants stemming from a real estate transaction.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Tommy Crane, a real estate agent, listed for sale property located at 425 Central Avenue in Jefferson Parish, Louisiana. The property was owned by Quentin D. Dastugue and his wife, Penny Matherne Dastugue. It was leased to Jack Sternberg, and his wife, Glyniss Schmolke *231 Sternberg, who were tenants in the property at the time it was listed. The Sternbergs had made a written offer to purchase the property, which the Dastugues accepted. The Sternbergs, however, were unable to obtain financing, and they were unable to purchase the property at that time.
Approximately four months later, Mr. Laborde contacted Mr. Crane after receiving a sales brochure describing the property. The Labordes submitted to the Dastugues, through Mr. Crane, a written agreement containing a ninety-day option to purchase the property. After some negotiation, an option agreement, which gave the Labordes the exclusive right to purchase the property within ninety days, was signed by the Dastugues and the Labordes. The option contained a provision giving the Labordes the right to sell, assign, or transfer to a third party their rights under the option, and it also contained a provision prohibiting the Dastugues from taking any "steps to unduly delay, deny, thwart, or unreasonably interfere with the Purchaser's [the Labordes'] exercise of the Option." When they signed the option, the Labordes paid to the Dastugues, through Mr. Crane, a non-refundable deposit in the amount of $1,000.
The option provided that "[w]ithin 10 days following the execution of this Agreement, Purchaser shall inspect the Property and if Purchaser elects to proceed with the Option Agreement, Purchaser shall pay the $20,000 balance of the Option payment." Although the Labordes did have an inspection of the property made by a professional home inspector, they paid the balance of the option payment before the inspection began.
After the Labordes had paid the entire amount of the option payment, they received a written report of the results of the inspection of the property. The report disclosed that although the sales brochure given to the Labordes by Mr. Crane stated that the property was located on an acre and a half lot with 4,400 square feet of living area in "excellent condition", the property actually was located on a lot measuring only three-fourths of an acre, the living space was 1,000 square feet less than was stated in the brochure, and there were major concerns about the condition of the roof and certain other aspects of the house. Mr. Crane explained that the discrepancy in the square footage was a result of different measuring techniques being used. The sales brochure also contained the following disclaimer:
The information supplied herein while not guaranteed is from sources we believe reliable. It is subject to errors, omissions .... The Real Estate board contract allows a buyer a 10 day inspection period to verify all information contained herein and we highly recommend all buyers to do so. To avoid reliance on information which could be erroneous, it is highly recommended that any purchaser provide for an inspection period in the purchase agreement to allow for verification of all information contained herein. (Emphasis added.)
Mr. Laborde is an attorney, and he advised Mr. Crane that his exercise of the option was dependent upon a favorable result in a case that was on appeal. He told Mr. Crane that if the final outcome in the case were favorable, he and his wife would purchase the property. If not, they would assign their rights under the option agreement to a third party.
A few weeks after the option agreement was executed, Mr. Laborde advised Mr. Crane that because he was concerned about the results of the inspection of the property and because the lawsuit on appeal had not yet been resolved, he intended *232 to assign his rights under the option so that he could recoup the money that he had paid to the Dastugues. Mr. Crane told Mr. Laborde that the Sternbergs remained interested in purchasing the property and suggested that Mr. Laborde contact them. Mr. Crane received no compensation for putting the parties in contact with each other, and he contends that he did this solely as a courtesy to the Labordes.
Mr. Sternberg advised Mr. Laborde that he was obtaining the financing necessary to purchase the property and that he and his wife wanted to purchase the Labordes' rights under the option. Although the Labordes contend that Mr. Sternberg and Mr. Crane repeatedly assured them that the Sternbergs' financing was approved, that they were going to purchase the property, and that they would purchase the Labordes' option, a formal sale of the option was never consummated. In fact, the Labordes claim that the Dastugues, acting through Mr. Crane, assured them that if the Sternbergs did not purchase the option from the Labordes, the Dastugues would evict the Sternbergs from the property. Nine days after the option expired, however, Mrs. Sternberg purchased the property from the Dastugues.
The Labordes brought the instant suit against the Dastugues, the Sternbergs, Mr. Crane, and Mr. Crane's company, Tommy Crane, Inc., alleging that these parties conspired to misrepresent material facts regarding the size, condition, and value of the property for the purpose of gaining unjust enrichment. The Labordes also alleged that the parties were liable for tortious interference with a contract and for breach of contract.
The original petition was amended twice. The first amendment to the petition supplemented the original petition by asking not only for damages but also for the rescission of the sale of the property to the Sternbergs and the reinstatement of the option. The second amendment to the petition added St. Paul Fire and Marine Insurance Company, the insurer for Mr. Crane and his company, as a defendant.
Mr. Crane, Tommy Crane, Inc., and St. Paul Insurance Company filed a motion for summary judgment. The Dastugues also filed a motion for summary judgment. Both motions were heard, and summary judgment was granted in favor of Mr. Crane, Tommy Crane, Inc., St. Paul Insurance Company, and the Dastugues. The Labordes' claims against these defendants were dismissed with prejudice. The Labordes are now appealing the granting of the summary judgments and the dismissal of the parties from this case with prejudice.[1]

DISCUSSION

Standard of Review
In Independent Fire Insurance. Co. v. Sunbeam Corp., 99-2181 and 99-2257 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. *233 C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action...." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows: The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966(C)(2). Id. at p. 7 and at 230-31.
See also Shelton v. Standard/700 Associates, XXXX-XXXX (La.10/16/01), 798 So.2d 60.

Assignments of Error
The Labordes have made four assignments of error on appeal. These assignments of error allege that the trial court erred in finding that there was no genuine issue of material fact in connection with the following claims by the Labordes:
I. that they were fraudulently induced to execute the option agreement by the fraudulent misrepresentations made by the Dastugues and Mr. Crane regarding the property;
II. that the Dastugues and Mr. Crane were unjustly enriched at the Labordes' expense;
III. that Mr. Crane tortiously interfered with the option agreement and that the Dastugues breached the option agreement; and
IV. that Mr. Crane failed to disclose his status as a dual agent and that he breached the statutory duties of a listing agent.
The Labordes also include in their assignments of error the failure of the trial court to find that the Dastugues and Mr. Crane conspired against them with respect to the foregoing acts and omissions.

I.
Fraudulent Misrepresentation and Fraudulent Inducement to Contract
In Shelton v. Standard/700 Associates, XXXX-XXXX, p. 5 (La.10/16/01), 798 So.2d 60, 64, the Louisiana Supreme Court discussed the requirements needed to prove fraud in connection with a contract as follows:
In sum, there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.
The Supreme Court in Shelton, citing La. C.C. art.1954, also stated that fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill unless a "relation of confidence has reasonably induced a party to rely on the other's assertions or representations." Id.
The Labordes complain that they were fraudulently induced to purchase the option, because the information in the sales brochure was inaccurate. Specifically, they allege that the sales brochure misrepresented the size and condition of the property. The sales brochure, however, contained an express disclaimer regarding the representations made in the brochure and recommended that all potential purchasers of the property perform their own inspection to verify the information in the brochure.
*234 Additionally, the option agreement contained a provision that required the Labordes to inspect the property. The option agreement provided for a ten-day inspection period during which the Labordes could thoroughly inspect the property prior to making the $20,000 payment for the option. The option agreement gave the Labordes the right to withdraw from the option if they were not satisfied with the results of the inspection. Rather than waiting until after they received the results of the inspection, however, the Labordes paid the $20,000 option payment. Therefore, they cannot now claim that they were fraudulently induced to purchase the option. Additionally, the Labordes toured the property prior to making the $20,000 payment, and they were aware of the size and general condition of the property at that time.
We find that one of the three basic elements required to prove an action for fraud, i.e., the intention to obtain an unjust advantage or to cause damage or inconvenience, was missing in the instant case with respect to the misrepresentations regarding the size and condition of the property. There is no evidence that the Dastugues or Mr. Crane intended to obtain an unjust advantage over, or to cause damage or inconvenience to, the Labordes. In fact, there are express disclaimers regarding the representations, and the option agreement obligated the Labordes to inspect the property prior to paying the option price.
The Labordes also contend that they were fraudulently induced to execute the option agreement by Mr. Crane's misrepresentation that the property was covered by a termite contract when it was not. Again, we find that there was no intent by Mr. Crane to defraud the Labordes when he advised them that the property was covered by a termite contract. Additionally, even if we were to find that Mr. Crane intentionally misrepresented the status of the property with respect to the termite contract, the misrepresentation did not sufficiently influence the Labordes' consent to the option agreement, because the agreement had already been executed and the option price had been paid at the time the misstatement regarding the termite contract was made. Therefore, one of the required elements set forth in the Shelton case for proving fraud is absent. We find that there was no fraud on the part of Mr. Crane or the Dastugues in connection with the execution of the option.
Finally, we note that the veracity of the information that the Labordes claim was misrepresented could have been ascertained by them "without difficulty, inconvenience, or special skill". La. C.C. art. 1954. The Labordes could have waited until they had the results of the property inspection regarding the condition and size of the property before paying the option price, and they, in fact, did ascertain by a simple telephone call to the relevant pest control company that the termite contract for the property had not been renewed. Therefore, even if we were to find that the Labordes were fraudulently induced to execute the option agreement, which we do not, the provisions of La. C.C. art.1954 would not permit us to vitiate the agreement.

II.

Unjust Enrichment
In Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888, the Louisiana Supreme Court listed as follows the requirements for a finding of unjust enrichment:
The five requirements for a showing of unjust enrichment, or actio de in rem verso, are: (1) there must be an enrichment, *235 (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of justification or cause for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.
648 So.2d at 897.
In this case the Labordes and the Dastugues executed an option agreement pursuant to which the parties agreed that for a ninety-day period the Labordes had the exclusive right to purchase the property and the Dastugues had the obligation to sell the property to no one but the Labordes or their successors in interest. The consideration for the Dastugues' agreement not to sell the property to anyone other than the Labordes for ninety days was the $21,000 paid by the Labordes to purchase the option. The option gave the Labordes the right to sell, assign, or otherwise transfer the option that they had purchased, and the Dastugues were prohibited from interfering with the Labordes' exercise of their option.
The facts show that the Dastugues did not sell the property to any party during the option period, and the Dastugues did not interfere with the Labordes' exercise of their option. Neither the Dastugues nor the Labordes were enriched or impoverished. There was a bargained for exchange, and each side received something of value for the consideration they gave. The Labordes had the right to buy the property at any time during the option period at the price stipulated in the option agreement, and they also had the right to assign their interest in the option agreement. They paid $21,000 for those rights. Similarly, the Dastugues gave up their right to sell the property to any other party, even if the terms offered were more beneficial to the Dastugues than the terms under the option agreement, and they received $21,000 in compensation for relinquishing their right to sell the property to a third party for ninety days. There was no enrichment, and there was no impoverishment, because each party received something of value for the consideration the party gave. Without an enrichment and an impoverishment, there is no unjust enrichment. Id.

III.

Tortious Interference with Contract and Breach of Contract
The Labordes further claim that the execution of an agreement to purchase and sell the property by the Dastugues and the Sternbergs during the option period constituted a breach of the option agreement. A party cannot be in breach of a contract, however, if the party performs all of the obligations required of the party under the contract.
The Dastugues were obligated not to sell the property during the option period to any party other than the Labordes or their successors in interest. Further, had the Labordes tendered the purchase price specified in the option agreement to the Dastugues at any time during the option period, the Dastugues would have been required to transfer marketable title to the Labordes. The Labordes, however, chose not to exercise their option. The Dastugues did not sell the property during the option period, and the Labordes have offered no evidence that the Dastugues would not have sold the property to them with marketable title had they exercised their option.
The Dastugues were also obligated not to interfere with the rights of the Labordes under the option agreement. The Labordes argue that this obligation required *236 them to be notified of any potential purchasers of the property who contacted Mr. Crane. The Labordes further argue that the Dastugues were obligated to take the property off the market during the option period. There was nothing, however, in the option agreement whereby the Dastugues agreed to apprise the Labordes of any potential purchasers, and there was nothing in the option agreement that required the Dastugues to remove the property from the market during the option period. Mr. Laborde is an attorney, he originally drafted the option agreement, and he could have chosen to restrict the marketing of the property during the option period and to require the Dastugues to notify him of potential purchasers, but he did not do so.
We find that the Dastugues did not breach any of their obligations under the option agreement, and they did not interfere with the Labordes' ability to exercise their option. We also find that the agreement to purchase and sell the property that the Dastugues and the Sternbergs executed during the option period did not interfere with the Labordes' right to exercise their option, because there was a provision in the agreement that specifically made it subject to the Labordes' rights under the option agreement.
The Labordes further complain that the Dastugues, acting through Mr. Crane, promised that if the Sternbergs did not purchase the option from the Labordes, the Dastugues would immediately evict the Sternbergs. The Labordes had the right at any time during the option period to transfer their rights under the option agreement to a third party. They did not do this. Instead, they attempted to sell their option only to the Sternbergs, but the parties could not reach an agreement on the terms of the transfer, so no contract for the purchase and sale of the option was ever confected.
Under the terms of the option agreement, the Dastugues were in no way obligated to locate an assignee or purchaser of the Labordes' option in the event that the Labordes chose not to exercise the option themselves or were unable to do so. There is also no evidence that the Dastugues received any consideration for their promise to evict the Sternbergs if they did not purchase the Labordes' option. In fact, the Dastugues had executed an agreement with the Sternbergs to sell them the property if the option expired and the Labordes had not purchased the property. The Labordes did not exercise their option, and they did not purchase the property. Therefore, if the Dastugues refused to sell their property to the Sternbergs, the Dastugues would have been in breach of the agreement to sell between them and the Sternbergs.
Based on the foregoing, we do not find that the Dastugues breached the option agreement. In fact, they fulfilled all of their obligations under the agreement.

IV.

Duties of a Listing Agent
The Labordes claim that Mr. Crane is liable to them for damages, because he breached the obligations imposed upon him by statute. Specifically, they claim that Mr. Crane violated his obligation to reveal "the terms of your negotiations with the tenant, including, but not limited to, any and all offers, counter-offers or agreed-upon purchase price(s)." The Labordes claim damages, because the terms and conditions of the agreement to purchase and sell between the Dastugues and the Sternbergs were not disclosed to them. The Labordes cite paragraphs 11-16, 18, *237 21, 22, and 27 of La. R.S. 37:1455(A)[2] as authority for their claims.
La. R.S. 9:3891(10) defines a "dual agency" in a real estate transaction to mean "an agency relationship in which a licensee is working with both buyer and seller or both landlord and tenant in the same transaction." The dual agency about which the Labordes complain was the dual agency between the Dastugues and the Sternbergs. Mr. Crane was clearly not required by statute to disclose to the Labordes "the terms of your negotiations with the tenant, including, but not limited to, any and all offers, counter-offers or agreed-upon purchase price(s)," because La. R.S. 9:3897(B)(3) specifically prohibits a licensed real estate agent from disclosing to clients when the agent is acting as a dual agent, "[t]he price the buyer or tenant is willing to pay without the permission of the buyer or tenant." Because the statute prohibits disclosure of the price to a party to a dual agency, we think it is clear that Mr. Crane was under no obligation to make a disclosure to the Labordes, who were not parties to the contract between the Dastugues and the Sternbergs.

Conspiracy Theory
Although the brief is somewhat unclear regarding the basis for the conspiracy allegations, it appears that the allegations are based on the failed negotiations with the Sternbergs regarding their purchase of the option from the Labordes. As discussed above, the Labordes have presented no evidence of a binding contract between the Labordes and the Sternbergs for the purchase of the option. Additionally, no evidence was presented to show that the Labordes were damaged by the fact that Mr. Crane may not have disclosed to the Labordes that he was a dual agent for the Dastugues and the Sternbergs.
It appears that the Labordes have misconstrued the obligations of the Dastugues under the option agreement. The right of the Labordes to assign the option to a third party in no way obligated the Dastugues, Mr. Crane, or anyone else to locate a buyer for the option if the Labordes could not or did not want to exercise it. The Labordes seem to believe that the Dastugues were in some way obligated not to sell the property to the Sternbergs after the option period expired, because they did not purchase the option. We find no basis for this belief.

CONCLUSION
We find that the judgments of the trial court were correct. They are hereby affirmed.
AFFIRMED.
NOTES
[1] The Sternbergs were not parties to the motions for summary judgment that were filed, and the Labordes' claims against them have not been dismissed.
[2] La. R.S. 37:1455 describes the situations in which a licensed real estate agent can be disciplined by the Louisiana Real Estate Commission.