MARION F. EDWARDS, Judge.
 

 |2The judgment on review in this appeal is a judgment rescinding the purported conveyances of undivided interests in certain immovable property after a finding of fraud and lesion beyond moiety. For reasons that follow, we reverse part of the judgment and affirm part of the judgment.
 

 The immovable property in question was acquired by four siblings, namely Vivian M. Clark (“Vivian”), Irma Jean Mott Simmons (“Irma”), Joseph Charles Mott (“Joseph”) and Alfred Mott, Jr. (“Alfred”), in a judgment of possession in the succession of their parents, Rebecca Hamilton and Joseph Mott, Jr., dated August 23, 1994. Each sibling received a one-fourth undivided interest in the immovables, which included the family home, a bar, some rental property, and a trailer park.
 

 In 2003, Alfred filed a petition to partition the property. At that time, the various properties were appraised. The record of that procedure is not before this Court. However, it appears that an agreement was reached among the parties before the property went to a sheriffs sale. All parties acknowledge that there was an agreement of the siblings that Alfred should be bought out in order to save the | .¡family property from being sold at a sheriffs sale. However, the parties do not agree on the method and outcome of this agreement.
 

 To put the plan into operation, Malcolm Clark, Jr. (“Malcolm”), Vivian’s son, prepared and presented the family with some ineptly crafted documents.
 

 
 *105
 
 There is one undated document signed by all parties except Alfred that evidences an intention of Vivian, Irma, and Joseph to buy Alfred’s one-fourth interest in the estate. A second undated document repeats this intention and adds a purchase price of $35,000 to be paid in two installments of $17,500. The first installment was to be paid within thirty days of the undated document and the final payment “to be paid in full with end [sic] six months.” That document also lists the properties affected by the agreement as:
 

 1. Bar
 

 2. Brick house
 

 3. Lot next to bar
 

 4. Trailer park
 

 5. Ante [sic] Vic [sic] house
 

 All parties signed this agreement.
 

 A more formal document dated March 12, 2004 shows that Alfred sold his one-fourth undivided share in all of the property to his sister, Vivian, for $35,000. Although the document states that the consideration of $35,000 cash was paid, and Alfred signed the document acknowledging that he received the money in full, testimony at the trial in the matter before us shows otherwise.
 

 After Alfred sold his share, the remaining three siblings executed a “Cash Sale,” dated May 6, 2004, in which both Joseph and Irma are listed as sellers.
 
 [1]
 
 The document transfers a one-fourth interest in the estate property owned by Joseph and Irma to Vivian.
 

 |4Also on that date, a “Promissory Note and Release” was executed. This document appears to be an attempt to arrange for payment from Vivian to Alfred for his one-fourth share. However, the document states:
 

 As stated, after date I promise to release Vivian M. Clark for her (1/4) interest in the Estate of Joseph Mott, Jr. and Rebecca Hamilton Mott from paying Alfred Mott the sum of THIRTY-FIVE DOLLARS AND 00/100 [sic] ($35,000.00), payable in (2) installments of $17,500.00 each, with the first (1st) payment commencing within 30 days of siding [sic] of the sale on March 12, 2004, payment your [sic] due and payable within Six Months of signing of sale thereafter until paid in full for value received.
 

 Promissory Note and Release due base [sic] on Alfred Mott getting Financing at another Loan Agent to buy his mother and father [sic] house, and Irma M. Simmons getting the bar to keep ownership within the current four family owner.[sic] This loan must not interfere with the loan that is now pending. With this release he all so [sic] agree [sic] to pay Vivian M. Clark ($17,-500.00) SEVENTEEN THOUSAND FIVE HUNDRED, same as above Thirty Days of Signing, [sic] This is now a PROMISSORY NOTE from ALFRED MOTT to VIVIAN M. CLARK.
 

 (Emphasis as found in original.) The document is signed by Alfred as “Releaser/Ac-ceptor” and by Malcolm as “acceptor.” Vivian did 15not sign the document.
 

 A second promissory note was executed on May 6, 2004, which, in pertinent part, states as follows:
 

 _ [sic] Notary Public, duly commissioned and qualified, and in the presence of the undersigned witnesses and persons, personally come and appeared: [sic]
 

 As stated, after date I promise to pay to the order of CHARLES MOTT for
 
 *106
 
 his (1/4) interest in the Estate of Joseph Mott, Jr. and Rebecca Hamilton Mott for the sum of THIRTY-FIVE THOUSAND DOLLARS AND 00/100 ($35, 000.00), payable in (5) installments of $7,000.00 each, or one-have [sic] of the fowling [sic] Properties [.]
 

 (Emphasis as found in original.) The document lists all of the estate properties and is signed on the second page by Joseph, Irma, and Malcolm as “sellers. Vivian did not sign the document. There is nothing in the document that identifies the maker of the note.
 

 A letter dated May 19, 2004 and written to Vivian indicates that the title insurance company required some curative .work before the mortgage could be obtained. The letter points out that the cash sale does not clearly state the names of the parties, and that it appears to only transfer a one-fourth interest, rather then a one-fourth interest for
 
 each
 
 of the sellers. The letter suggests the parties execute two separate “quit claim sales” without warranty on the property using the full and correct names.
 

 In response to this letter, Malcolm drew up two “Quit Claim Sales.” They are both dated “the _ Day of May, 2004” [sic]. Both of these documents purport to transfer the same properties conveyed in the May 6, 2004 cash sale. However, one lists the seller as “Joseph Charles Mott” and the other lists the seller as “Irma Mott Simmons.” Each document conveys a one-fourth interest in the properties. The documents also state in pertinent part that:
 

 Who declared that for the consideration hereinafter mentions, Seller does by these presents grant, bargain, sell, transfer, convey, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which he has or may have against all preceding owners, and vendors ....
 

 [[Image here]]
 

 This sale is made and accepted for and in consideration of the ONE HUNDRED PERCENT (100%) INTEREST OF ONE-FOURTH (1/4%) [sic] INTEREST IN A CERTAIN LOT OR PORTION OF GROUND ABOVE, hereby [sic] acknowledges thereof full acceptance and discharge thereof.
 

 (Emphasis as found in original.)
 

 | r,These are three-page documents. The substance of the documents is contained on the first two pages, and the third page consists only of the signatures.
 

 This was obviously an attempt to correct errors in the cash sale pointed out to the parties in the letter from the title company. After all of the documents were executed and filed in the conveyance office, Vivian obtained a mortgage from Ameri-quest Mortgage (“Ameriquest”) in the amount of $64,999.
 

 When Joseph and Irma failed to receive any payment for the property or the return of their one-fourth interest in the property, they filed this action to annul and rescind the property transfers, alleging lesion beyond moiety and fraud. After a hearing on the matter, the trial court rendered judgment in favor of plaintiffs/appellees, annulling, rescinding and setting aside all of the “purported conveyances.” The judgment further ordered that the mortgage in favor of Ameriquest did not affect the undivided one-half interest owned by Joseph and Irma. Additionally, the judgment found fraud on the part of the defendants/appellants, Vivian and Malcolm, and provided for attorney’s fees pursuant to LSA-C.C. art.1958. Defendants/appellants have appealed that judgment.
 

 
 *107
 
 According to plaintiffs/appellees, Irma and Joseph, it was Vivian who actually wanted to purchase Alfred’s one-fourth interest in the property but could not afford to pay Alfred the amount due on the agreement unless she could secure a mortgage on the property. The family formed a plan whereby Alfred, Irma, and Joseph would each transfer their one-fourth interest in the property to Vivian so that she could secure a mortgage. After Alfred sold his shares to the other three siblings in the partition proceeding, Joseph and Irma attempted to convey their shares to Vivian by way of a cash sale. Joseph and Irma thought that this was |7necessary for Vivian to obtain a mortgage of the property to secure the funds to pay Alfred and to make some improvements to the bar.
 

 The expectations of the plaintiffs/appel-lees was that, after the funds were obtained, Vivian would pay Alfred the $85,000 due and pay the mortgage. In return, Vivian would return to Joseph and Irma their one-fourth interest each in the property of the estate, and the property would be owned by the Vivian, Joseph, and Irma, with Vivian owning a one-half interest and Joseph and Irma each owning a one-fourth interest.
 

 At the trial on the petition filed by Joseph and Irma to annul and rescind the sales, Joseph testified that he lived in one of the properties affected by the transactions. In January 2005, Joseph returned from a job in Alabama to find an eviction notice on his front door. The locks on his home had been changed and some of his personal belongings were removed from the home. Upon investigation, Joseph discovered that eviction proceedings were filed by Vivian and her son, Malcolm. Joseph tried to speak to Vivian to no avail. Joseph went back to his home and climbed through a window to retrieve the remainder of his belongings from his home. Joseph consulted an attorney and filed this action to have the sales annulled and rescinded.
 

 It is clear from the testimony at trial that Joseph has a sixth-grade education and is unable to read. He stated that he trusted his sister, Vivian, and her son, Malcolm, who told Joseph they needed him to sign some papers so they could buy Alfred’s share and fix up the bar. Joseph was trying to help his sister and never intended to give her his share of the estate.
 

 Irma also testified at trial. Her testimony supports that of Joseph. Irma said she only signed the documents to protect the property from a sheriff’s sale and to help Vivian get a loan to pay Alfred’s share and to make improvements on some of |sthe property. She and Joseph both testified that Malcolm prepared all of the paperwork and they trusted him. Irma and Joseph both stated they never saw the Quit Claim documents because Malcolm was preparing them on his laptop computer and told them he was running out of ink. Consequently, he only printed out the signature pages. Neither Irma nor Joseph has received any money from Vivian.
 

 Malcolm appeared in proper person representing his mother and himself. Vivian testified that she agreed to pay Alfred $85,000 for his one-fourth share of the property. She agreed with Joseph and Irma that the entire family agreed to help her obtain the mortgage to keep the property from being sold at a sheriffs sale pursuant to the Petition for Partition filed by Alfred. Vivian stated that she needed the consent of Joseph and Irma to get a mortgage on the property.
 

 However, Vivian’s concept of what should result from the transactions differs greatly from that of Joseph and Irma. Vivian stated that she gave Irma and Jo
 
 *108
 
 seph a promissory note to ensure them they were still entitled to their one-fourth interest in the estate property. However, she also testified that there was never an intention to pay either Joseph or Irma any money. The promissory note was only given to stop the sheriffs sale. Vivian stated that Irma and Joseph still have their share of the property, but it’s now in the form of a promissory note. Vivian explained that she and her son, Malcolm, handle and control the family property for the benefit of the family. She recognizes the Joseph and Irma each still hold one-fourth of the estate. However, they will get no money for it, no control over it, and apparently no consideration for any appreciation of the property in the future.
 

 Vivian and Malcolm insist that the consideration for the transfer of the property to her is a promissory note in the amount of $35,000.
 

 | nIrma and Joseph both stated they believe Vivian and Malcolm committed fraud because they never intended to return the property, as agreed, after the mortgage was obtained. Further, they never intended to pay anything on the promissory note.
 

 Vivian testified that Joseph’s house had to be rented out to pay the mortgage. She explained that she took out the loan and handled the family’s property because no one else in the family was willing or able to do so.
 

 Vivian also said that she gave Malcolm power of attorney, although she did not have a copy of that document with her. It is clear from Vivian’s testimony that she allowed Malcolm to handle the transactions.
 

 She paid Alfred $17,500. However, according to Vivian’s testimony, when she tried to pay Alfred the other half of the money, he refused to accept it.
 

 Alfred testified that his agreement was to sell his share of the family home to Vivian for $35,000 to be paid in two installments within thirty days of the signing of the note. Alfred stated that nothing was done the way he, Joseph, and Irma expected. He testified that Malcolm took the “crooked” way and kept changing the agreements. At some point, Alfred tried to borrow $70,000 to get Vivian and Malcolm “out of our hair.” Alfred stated he felt that he, Joseph, and Irma could handle the property situation fairly and much easier without Malcolm and Vivian. Alfred said that he, Joseph, and Irma were in agreement about what should happen to the property and could have divided it up fairly, but Malcolm was the problem.
 

 Alfred’s plan failed because Vivian refused to sell her share. Alfred stated that Vivian and Malcolm want all of the property with value, including the house, the bar, and the trailer park. Alfred testified that Vivian and Malcolm wanted “everything.” In conclusion, Alfred stated that he received the first payment of $17,500. However, he did not receive the second payment due thirty days later. 110Malcolm wanted to change the agreement to pay Alfred in “dribs and drabs.” Alfred did not accept that change in the agreement and refused to take the smaller payments. Consequently, Alfred only received one-half of the amount owed on the promissory note.
 

 Malcolm also testified at trial that he admitted the only consideration given to Irma and Joseph for the sale of their interests in the property was a promissory note. Malcolm testified that he also gave a promissory note to Alfred to “reverse the agreement with Alfred on the condition that Irma would get the family home.” Malcolm also said that he and his mother intended to pay Joseph the money owed on the other promissory note when they start
 
 *109
 
 ed getting some income from the rental property. He did not say when that might happen.
 

 Malcolm also asserted that he gave Joseph some money to make repairs on one of the houses, a fact which Joseph denied. However, Joseph did acknowledge that Malcolm once gave him $800 to get to Alabama for a job. It was when Joseph came back from that job that he discovered Malcolm had initiated eviction proceedings. Joseph also denied Malcolm’s testimony that Joseph was offered “Aunt Vic’ [sic] house” in return for Vivian getting all of the other property. Joseph testified he never agreed to pay a mortgage note on the property or to give all property rights to the sibling who paid the mortgage note.
 

 LAW
 

 In brief to this Court, defendants/appellants, Vivian and Malcolm, assign two errors. In the first error, they assert that the trial court erred in finding the sale was void due to lesion beyond moiety. The argument on this assignment is twofold. Vivian and Malcolm argue the failure of competent expert evidence to establish the contemporaneous value at the time of the act of sale precludes the finding by the trial court. Second, the Clarks argue that plaintiffs/appellees, Joseph |^and Irma, are limited to the enforcement of the promissory note. We find no merit in either argument for the following reasons.
 

 We find neither the Cash Sale nor the two Quit Claim Sales are valid sales documents. In Louisiana a valid sale requires the concurrence of three elements: the thing sold, the price, and the consent of the parties.
 
 [2]
 
 A contract of sale is incomplete unless there is a meeting of the minds between the parties as to the object and the price.
 
 [3]
 

 None of the documents contain a price for the property sold. Further, it is clear from the testimony there was never a meeting of the minds to sell. Joseph and Irma thought they were simply helping Vivian to get funds to buy Alfred’s share.
 

 In addition to the problems of lack of intent to sell on the parts of Irma and Joseph, and the lack of consideration for the sale, there are issues of form.
 

 The Civil Code requires that all sales of immovable property shall be made by authentic act or under private signature.
 
 [4]
 
 The Civil Code further requires that an act under private signature need not be written by the parties, but must be signed by them.
 
 [5]
 
 None of the purported sales documents were signed by the purchaser, Vivian. They were all signed by Malcolm, who is not a party to the sale.
 

 Although Vivian testified that she told Malcolm to execute whatever documents were necessary, that is not sufficient to establish a mandate to purchase immovable property in Louisiana. The authority to alienate, acquire, encumber, or lease a thing must be given expressly.
 
 [6]
 
 When the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.
 
 [7]
 
 Therefore, a mandate hato purchase immovable property must be express and in writing. Here, there is no showing that Vivian expressly and in writing gave Malcolm the mandate to execute any of the purported sales documents.
 

 
 *110
 
 Defendants/appellants argue the consideration for the sales of property from Irma and Joseph to Vivian was the promissory note. We disagree. As previously noted, none of the purported sales documents mention a price decided upon for the property. Further, we find the promissory note is invalid as to content and form.
 

 It is axiomatic that any legally enforceable promise to pay must be signed by an identifiable maker. The promissory note to which defendants/appellants refer has no maker. It simple states, “I promise to pay.” The top paragraph of the note, which would normally state the name of the Notary Public and the affiant, is blank. Further, the note is not signed by the purchaser. As is the case with the sales documents, Malcolm signed the note. The note is signed by Malcolm, Joseph and Irma, but not by Vivian. All signed as “seller/acceptor.”
 

 Thus, the document, which defendants/appellants claim is the only recourse Joseph and Irma have for remedy in this action, is an unenforceable promise to pay by an unknown party an amount of $35,000 to Joseph. Irma is not listed on the note.
 

 Because we find none of the documents purported to transfer property to be valid, the issue of whether the sales represented lesions beyond moiety is moot. This argument is without merit.
 

 Accordingly, we find the trial court was correct in finding the Cash Sale executed on May 6, 2004 and the two Quit Claim Sales executed on an unidentified day in May of 2004 are null and void.
 

 In the second assignment of error, Vivian and Malcolm argue the trial court erred in finding fraud. The basis of the argument calls into question the credibility |13of Joseph and Irma. Defendants/appellants argue simply that the scenario presented by the testimony of plaintiffs/appel-lees is “beyond belief.”
 

 In the original petition, Joseph and Irma have affirmatively alleged fraud and requested attorney’s fees pursuant to LSA-C.C. art.1958.
 

 Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.
 
 [8]
 
 There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim’s consent to (a cause of) the contract.
 
 [9]
 

 The defendants/appellants do not deny they tried to get control of Joseph and Irma’s share of the estate property nor do they deny they gave Joseph and Irma no consideration for the sale. Further, although Vivian and Malcolm argue the consideration is the promissory note, they both admitted they have no set plans to pay the amount owed on it. We have also taken into consideration the fact that all of the relevant documents were drawn up by Malcolm without a legal mandate, in an attempt to do his mother’s bidding, and that both Joseph and Irma trusted him.
 

 It is clear from the Reasons for Judgment that the trial court found Joseph and Irma’s testimony to be more credible than that of Vivian and Malcolm. When
 
 *111
 
 factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in | ^demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 [10]
 

 A court of appeal may not set aside a judge or jury’s factual finding unless that finding is manifestly erroneous or clearly wrong. Given the facts of this ease, we cannot find error in the trial court’s finding of fraud.
 

 Accordingly, we affirm the trial court’s ruling that plaintiffs/appellees have proven fraud on the part of defendants/appellants, entitling plaintiffs/appellees to attorney’s fees pursuant to LSA-C.C. art.1958.
 

 As an alternative argument, defendants/appellants assert the matter should be remanded to the trial court for the failure to join Ameriquest as an indispensable party. Part of the judgment orders that the mortgage in favor of Ameriquest Mortgage does not affect the undivided one-half interest owned by Joseph and Irma.
 

 The concept of necessary and indispensable parties has been consolidated in LSA-C.C.P. art. 641, which reads as follows:
 

 A person shall be joined as a party in the action when either:
 

 (1) In his absence complete relief cannot be accorded among those already parties.
 

 (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
 

 (a) As a practical matter, impair or impede his ability to protect that interest.
 

 (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
 

 Clearly, Ameriquest has an interest in this matter. It holds a mortgage on at least some of the estate property and that mortgage is filed in the conveyance 11soffice of St. Charles Parish. Consequently, Ameriquest would be included in the above article. Although it is clear from the record that only Vivian is the debtor on the mortgage, it is not clear from the record which properties are included in the mortgage. We find that the trial court erred in rendering a judgment limiting Ameriquest’s mortgage to the one-half undivided interest owned by Vivian and we reverse that portion of the judgment.
 

 Any recourse that Joseph and Irma may have as a result of the mortgage on their interest in the property is not before this Court in this proceeding.
 

 For the foregoing reasons, we reverse that portion of the judgment that orders the mortgage dated October 1, 2004, in favor of Ameriquest and recorded at MOB 1248, folio 761, Parish of St. Charles, State of Louisiana, shall not affect the undivided one-half interest of Irma and Joseph in the property. In all other respects the judgment is affirmed.
 

 REVERSED IN PART; AFFIRMED IN PART.
 

 [1]
 

 . The document actually lists "Charles Mott” as one of the sellers; however, it appears the seller is actually Joseph Charles Mott, plaintiff-appellee herein.
 

 [2]
 

 . LSA-C.C. art. 2439.
 

 [3]
 

 . LSA-C.C. art. 2456.
 

 [4]
 

 . LSA-C.C. art. 2440.
 

 [5]
 

 . LSA-C.C. art. 1837.
 

 [6]
 

 . LSA-C.C. art. 2996.
 

 [7]
 

 . LSA-C.C. art. 2993.
 

 [8]
 

 . LSA-C.C. art. 1953.
 

 [9]
 

 .
 
 Shelton v. Standard/700 Assoc.,
 
 2001-0587 (La.10/16/01), 798 So.2d 60, 64.
 

 [10]
 

 .
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).