STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0594 and
2022 CW 0961

## PONTCHARTRAIN NATURAL GAS SYSTEM, K/D/S PROMIX, L.L.C. & ACADIAN GAS PIPELINE SYSTEM

### VERSUS

### TEXAS BRINE COMPANY, LLC

Judgment Rendered: _____ **JAN 2 0 2023**

* * * * * * *

On Appeal from the 23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Trial Court Docket Number 34265, Div. B

Hon. Thomas J. Kliebert, Jr., Judge Presiding, Ad Hoc

* * * * * * *

Leopold Z. Sher
James M. Garner
Peter L. Hilbert, Jr.
Neal J. King
Rebekka C. Veith
Martha Y. Curtis
Kevin M. McGlone
Jeffrey D. Kessler
Christopher T. Chocheles
Amanda R. Schenck
New Orleans, Louisiana
        and
Ulysses Gene Thibodeaux
Lake Charles, Louisiana
        and
Travis J. Turner
Gonzales, Louisiana
        and
Robert Ryland Percy, III
Gonzales, Louisiana

Counsel for Appellant/
Third-Party Plaintiff/Relator,
Texas Brine Company, L.L.C.

Roy C. Cheatwood
Kent A. Lambert
Adam B. Zuckerman
Leopoldo J. Yanez
Colleen C. Jarrott

Counsel for Appellee/
Third-Party Defendant/Respondent,
Legacy Vulcan, LLC

Lauren Brink Adams
Matthew S. Chester
Matthew C. Juneau
New Orleans, Louisiana
        and
Antonio M. "Tony" Clayton
Port Allen, Louisiana

* * * * * * *

**BEFORE: WELCH, HOLDRIDGE, AND PENZATO, JJ.**

**PENZATO, J.**

Texas Brine Company, LLC appeals from a January 6, 2022 judgment that granted Legacy Vulcan, LLC's motion for partial summary judgment and dismissed, with prejudice, Texas Brine's fraud and concealment/omission contentions and causes of action against Legacy Vulcan. For the following reasons, the January 6, 2022 judgment is affirmed. Additionally, we deny Texas Brine's writ application concerning the trial court's denial of Texas Brine's motion for partial summary judgment regarding Legacy Vulcan's liability as an intentional tortfeasor for Texas Brine's damages, which was previously referred to this panel.

## FACTS AND PROCEDURAL HISTORY

On August 3, 2012, a sinkhole developed in Assumption Parish in an area known as the Napoleonville Salt Dome. The pertinent factual and procedural background of this case, which arises out of the sinkhole, is thoroughly set forth in *Pontchartrain Natural Gas System, k/d/s Promix, L.L.C. and Acadian Gas Pipeline System v. Texas Brine Co., LLC*, 2018-1249 (La. App. 1st Cir. 12/30/20), 317 So.3d 715, *writs denied*, 2021-00382, 2021-00386 (La. 6/8/21), 317 So.3d 323. The trial court divided the case into four trial phases, with the first to determine liability. The Phase 1 trial was held in September and October 2017 "for the purpose of determining what caused the sinkhole to form and which parties, if any, were at fault under any theory of law for causing the formation of the sinkhole." *Pontchartrain*, 317 So.3d at 725. Texas Brine and Legacy Vulcan, among others, participated in the Phase 1 trial.

Pertinently, it was established at trial that the sinkhole was caused by the collapse of the cavern surrounding a brine well known as the Oxy Geismar 3 (OG3). *Pontchartrain*, 317 So.3d at 745, 749. The OG3 was drilled by Texas Brine in May 1982 on a tract of land (referred to as the "North 40") on the western edge of the Napoleonville Salt Dome. Texas Brine drilled the OG3 pursuant to a series of interdependent contracts with Legacy Vulcan, the lessee of the North 40

3

until 2005. In June 2005, Legacy Vulcan sold its chloralkali business to Occidental Chemical Corporation. *Pontchartrain*, 317 So.3d at 725-27, 732. Texas Brine served as operator of the OG3 for the life of the well and mined brine from the OG3, which was used by Legacy Vulcan, then Occidental, in connection with the lessees' chloralkali business. *Pontchartrain*, 317 So.3d at 754, 757, 762.

After taking the matter under advisement and ruling on various motions for new trial, the trial court signed an amended Phase 1 judgment on April 18, 2018, and allocated fault among the entities found to be responsible for causing the sinkhole: 40% to Occidental; 5% each to Occidental's affiliates, Occidental Petroleum Corporation and OXY USA, Inc.; 25% to Texas Brine; 10% to United Brine Services Company, LLC; and 15% to Legacy Vulcan. *Pontchartrain*, 317 So.3d at 739.

Texas Brine filed an appeal with this court, resulting in the *Pontchartrain*, 317 So.3d 715, decision. On appeal, the April 18, 2018 Phase 1 judgment was reversed in part, amended in part, and affirmed in part. Specifically, this court reduced Occidental's fault allocation to 30% and assigned no fault to Occidental Petroleum Corporation and OXY USA, Inc. The allocations of 15% of fault to Legacy Vulcan and 10% to United Brine Services Company, LLC were affirmed, and the fault allocation to Texas Brine was amended to 45%. *Pontchartrain*, 317 So.3d at 763. The judgment of this court became final following the Louisiana Supreme Court's denial of all related writs of certiorari. *See Pontchartrain*, 317 So.3d 323; La. C.C.P. art. 2166(E).

The case proceeded before the trial court on the remaining issues and trial phases. Legacy Vulcan filed the instant motion for partial summary judgment in August 2021. Legacy Vulcan sought to dismiss Texas Brine's fraud and concealment/omission claims and causes of action that were to be tried in connection with Phase 2. In its motion, which was premised on the issue preclusion principle of *res judicata*, Legacy Vulcan asserted that the merits of

4

Texas Brine's fraud allegations were tried during the Phase 1 trial and were essential to the Phase 1 judgment. Legacy Vulcan maintained that issue preclusion bars relitigation of the same factual contentions during future trial phases. *See* La. R.S. 13:4231(3).

Specifically, Texas Brine alleged and sought to prove during the Phase 1 trial that Legacy Vulcan fraudulently withheld assessments and reports prepared for it by its employee, Mark Juzsli, and outside consultants, Larry Sevenker (PB-KBB) and RE/SPEC, Inc. The reports set forth the consultants' analyses, observations, and, sometimes, concerns, regarding the OG3 and, particularly, its proximity to the edge of the salt dome. *Pontchartrain*, 317 So.3d at 726-730. In connection with the trial court's Phase 1 liability determination, Texas Brine undisputedly raised Legacy Vulcan's alleged fraud as an affirmative defense and urged that Legacy Vulcan should be assessed with a greater percentage of fault for intentionally withholding this information from Texas Brine.

In its motion for partial summary judgment, Legacy Vulcan asserted that the trial court and this court, in *Pontchartrain*, 317 So.3d 715, rejected Texas Brine's fraud contentions. Since the *Pontchartrain* (Phase 1) judgment is now final, Legacy Vulcan maintained that Texas Brine is barred from relitigating the same factual contentions in support of its fraud-based incidental demands against Legacy Vulcan.

Texas Brine opposed the motion and argued that its "contractual fraud" incidental demand against Legacy Vulcan was not tried during the Phase 1 trial. Although Texas Brine acknowledged that its fraud allegations were at issue in the Phase 1 trial, it asserted that the trial court was not asked to adjudicate the merits of its contractual fraud claim. Instead, "[f]raud was only addressed to the extent that Legacy Vulcan's intentional withholding of information affected the allocation of fault...." Texas Brine asserted that the trial court allocated 15% of fault to Legacy Vulcan after specifically finding that Legacy Vulcan withheld the Sevenker reports

5

from Texas Brine. However, because the trial court made no specific finding as to Legacy Vulcan's fraud, Texas Brine maintained that the issue of Legacy Vulcan's fraud was not "necessarily decided" during the Phase 1 trial for purposes of *res judicata*. Finally, Texas Brine argued that exceptional circumstances justify relief from the effects of *res judicata*, citing the complex, multi-phase nature of the case and a voluminous document production made by Legacy Vulcan two years after the Phase 1 trial. *See* La. R.S. 13:4232.

Following a contradictory hearing on the motion, held in December 2021, the trial court took the matter under advisement. On January 6, 2022, the trial court signed a judgment granting Legacy Vulcan's motion for partial summary judgment and dismissing, with prejudice, "any fraud and concealment/omission contentions and causes of action by Texas Brine against [Legacy] Vulcan." In its January 6, 2022 written reasons for granting Legacy Vulcan's motion for partial summary judgment, the trial court found that Texas Brine "put its contention of fraud before the Court" during the Phase 1 trial "by way of an affirmative defense." The trial court pointed out that, during the Phase 1 trial, "Texas Brine argued that its fraud affirmative defense and contentions absolved it of fault completely" under La. C.C. art. 2323(C). The trial court noted that it "allocated a significant portion of fault to Texas Brine" in the Phase 1 judgment, thereby implicitly rejecting Texas Brine's fraud claim, and concluded that the determination of this issue was essential to the Phase 1 judgment. The trial court explained, "Texas Brine's 'contract fraud' claim is based on the same facts and implicates the same essential legal elements as its 'tortious fraud' affirmative defense, which was fully litigated during Phase 1." Finally, the trial court concluded, "The express factual findings made by this Court and the First Circuit in Phase 1 counter the essential elements of Texas Brine's fraud claims, and bar Texas Brine from pursuing its 'contract fraud' claim in subsequent trial phases based on issue preclusion" under La. R.S. 13:4231(3).

6

The trial court certified the January 6, 2022 judgment as final pursuant to La. C.C.P. art. 1915, finding no just reason for delay. Texas Brine filed the instant appeal.[1]

## DISCUSSION

### *La. C.C.P. art. 1915(B) Certification*

The January 6, 2022 judgment is not a final judgment for purposes of an immediate appeal under La. C.C.P. arts. 1841 or 1915(A).[2] Therefore, this court's appellate jurisdiction depends upon whether the judgment was properly designated and certified as a final judgment pursuant to Article 1915(B)(1). *See* La. C.C.P. arts. 1911(B) and 2083. The trial court's Article 1915(B) designation is not binding on this court. When, as here, no reasons for the certification are given, but some justification is apparent from the record, the appellate court should make a *de novo* determination of whether the certification was proper. *See R.J. Messinger, Inc. v. Rosenblum*, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122; *Kosak v. Louisiana Farm Bureau Casualty Ins. Co.*, 2020-0222 (La. App. 1st Cir. 12/10/20), 316 So.3d 522, 529.

When making this determination, the overriding inquiry is whether there is no just reason for delay. Additionally, consideration is given to the relationship between the adjudicated and unadjudicated claims; the possibility that the need for review might or might not be mooted by future developments in the trial court; the possibility the reviewing court might be obliged to consider the same issue a second time; and miscellaneous factors such as delay, economic and solvency

---

[1] Texas Brine also filed a writ application with this court (2022 CW 0961) relating to a July 19, 2022 judgment that denied Texas Brine's motion for partial summary judgment regarding Legacy Vulcan's alleged liability as an intentional tortfeasor as purportedly determined by this court in *Pontchartrain*, 317 So.3d 715. The writ application was referred to the panel handling the merits of this appeal. *Pontchartrain Natural Gas System, k/d/s Promix, LLC, and Acadian Gas Pipeline System v. Texas Brine Company, LLC*, 2022-0961 (La. App. 1st Cir. 10/11/22) (unpublished writ action). On review, we decline to exercise supervisory jurisdiction and deny the writ.

[2] The January 6, 2022, judgment dismissed only one of many claims and/or causes of action pending between the parties.

considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *R.J. Messinger, Inc.*, 894 So.2d at 1122-23; *Kosak*, 316 So.3d at 529.[3]

Upon our *de novo* review, we find that the January 6, 2022 judgment was properly certified under La. C.C.P. art. 1915(B). Most significantly, the unadjudicated claims and factual contentions at issue in the present appeal are related to the adjudicated claims and factual contentions litigated to final judgment in *Pontchartrain*, 317 So.3d 715. For this reason, we also find it unlikely that the need for review will be mooted by future developments in the trial court or that this court will be obligated to consider this issue a second time. The *Pontchartrain*, 317 So.3d 715, decision is determinative and must be given preclusive effect. *See* La. C.C.P. art. 2166(E); *Bailey v. Clark*, 2020-0257 (La. App. 1st Cir. 5/12/21), 326 So.3d 900, 902 ("A final judgment from which there can be no appeal acquires the authority of a thing adjudged, and no court has jurisdiction to change the judgment.") Under the specific facts and procedural posture of this appeal, we find no just reason for delay and conclude that this court has jurisdiction to consider the merits of this appeal.

### Standard of Review and Applicable Law

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Russell v. City of Baton Rouge/Parish of East Baton Rouge*, 2018-0600 (La. App. 1st Cir. 1/17/19), 271 So.3d 231, 234. Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. *Chevis v.*

---

[3] While our courts have historically had a policy against multiple appeals and piecemeal litigation, this case and the related sinkhole litigation has been splintered since inception. *See Kosak*, 316 So.3d at 529.

8

*Rivera*, 2021-0124 (La. App. 1st Cir. 9/24/21), 329 So.3d 831, 834-35, *writ denied*, 2021-01546 (La. 12/21/21), 330 So.3d 317. Using these considerations and criteria, appellate courts review evidence *de novo* to determine whether summary judgment is appropriate. *Ellis v. Circle L Trucking, L.L.C.*, 2021-0457 (La. App. 1st Cir. 12/30/21), 340 So.3d 985, 988.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). Additionally, the burden of proving the facts essential to a claim of *res judicata* is on the party pleading the objection. *Global Marketing Solutions, L.L.C. v. Chevron U.S.A. Inc.*, 2018-1765 (La. App. 1st Cir. 9/27/19), 286 So.3d 1054, 1061, *writ denied*, 2019-01886 (La. 2/10/20), 347 So.3d 741. When, as here, the moving party will bear the burden of proof at trial on the issue raised in the motion for summary judgment, the motion must be supported with credible evidence that would entitle the mover to a directed verdict if not controverted at trial. *Aucoin v. Larpenter*, 2020-0792 (La. App. 1st Cir. 4/16/21), 324 So.3d 626, 632, *writ denied*, 2021-00688 (La. 9/27/21), 324 So.3d 87, *citing Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 766 (*per curiam*).[4] Such an affirmative showing shifts the burden of production to the party opposing the motion and requires the opposing party to produce evidence to demonstrate the existence of a genuine issue for trial. *Aucoin*, 324 So.3d at 632, *citing Hines*, 876 So.2d at 766-67.

***Assignment of Error No. 1***

In its first assignment of error, Texas Brine asserts that the trial court erred by applying *res judicata*, because the doctrine does not apply if any doubt exists as to its application. Specifically, Texas Brine maintains that the parties and the trial

---

[4] A motion for directed verdict is appropriately granted when, after considering all evidentiary inferences in the light most favorable to the party opposing the motion, it is clear the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. *Wachovia Mortgage Corp. v. Hoover*, 2021-1035 (La. App. 1st Cir. 4/8/22), 342 So.3d 1, 4, *writ denied*, 2022-00860 (La. 9/27/22), 347 So.3d 156.

court agreed on the limited purpose of the Phase 1 trial – to determine liability – and further agreed that all incidental demands between the parties, including Texas Brine's contract-based fraud claim against Legacy Vulcan, would not be adjudicated in the Phase 1 trial.

Louisiana's issue preclusion principle is codified in La. R.S. 13:4231, which pertinently states:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
> * * *
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to *any issue* actually litigated and determined if its determination was essential to that judgment.

[Emphasis added.]

Under issue preclusion, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. La. R.S. 13:4231, 1990 Official Comment (b); *Quatrevingt v. State of Louisiana through Landry*, 2017-0884 (La. App. 1st Cir. 2/8/18), 242 So.3d 625, 639, *writ denied*, 2018-0391 (La. 4/27/18), 239 So.3d 837. Issue preclusion forecloses the relitigation of matters that have been previously litigated and decided. *Quatrevingt*, 242 So.3d at 639.

The jurisprudence has construed La. R.S. 13:4231(3) to require the satisfaction of three elements for issue preclusion to apply: (1) a valid and final judgment, (2) identity of the parties, and (3) an issue that has been actually litigated and determined and its determination was essential to the prior judgment. Issue preclusion only can be invoked when all essential elements are present, and each necessary element must be established beyond all question. *Jones v. Daimler Trucks North America, Inc.*, 2021-0504, 2021-0505 (La. App. 4th Cir. 2/23/22), 336 So.3d 622, 627, *writ denied*, 2022-00516 (La. 5/24/22), 338 So.3d 45. The doctrine of *res judicata* is not discretionary and mandates the effect to be given

10

final judgments. However, if any doubt exists as to its application, the objection of *res judicata* must be overruled and the second lawsuit maintained. *Global Marketing Solutions, L.L.C.,* 286 So.3d at 1061.

<u>Valid and Final Judgment and Identical Parties:</u> These elements are undisputedly satisfied. As noted, the Phase 1 judgment, which is now final, is the pertinent judgment for purposes of Legacy Vulcan's motion. *See Pontchartrain,* 317 So.3d 715; La. C.C.P. art. 2166(E). Additionally, both Texas Brine and Legacy Vulcan were parties to the Phase 1 trial, are bound by this court's judgment in *Pontchartrain,* 317 So.3d 715, and are parties to Legacy Vulcan's motion for partial summary judgment.

<u>Actually Litigated and Determination Was Essential:</u> Texas Brine's cause of action for contract-based fraud will be barred if the factual contentions that form the basis of that claim were actually litigated and determined in the Phase 1 judgment and the determination was essential to that judgment. The dispositive issues that were actually litigated to judgment during the Phase 1 trial are the focus of this element of the issue preclusion doctrine, not the particular cause of action. For instance, *see Jones,* 336 So.3d 622, wherein the Jones plaintiffs filed suit in May 2013 against Daimler Trucks North America, LLC (DTNA), among others, seeking loss of consortium damages in connection with serious injuries sustained by their mother in a 2012 accident. The trial court granted DTNA's motion for summary judgment in January 2014, finding DTNA was not liable to the Jones plaintiffs, as a matter of law, and the claims against DTNA were dismissed with prejudice. The Jones plaintiffs did not appeal, and the judgment became final. *Jones,* 336 So.3d at 626. After their mother's death in March 2018, the Jones plaintiffs filed a wrongful death suit against DTNA, among others, concerning the same 2012 accident. In response, DTNA filed an exception of *res judicata* based on issue preclusion, relying on the prior judgment granting its motion for summary judgment. *Jones,* 336 So.3d at 627. The trial court granted the exception, and the

11

court of appeal affirmed. Although the Jones plaintiffs' wrongful death cause of action was not litigated in connection with DTNA's January 2014 summary judgment (in fact, the cause of action did not exist until 2018[5]), the Jones plaintiffs were, nevertheless, barred from relitigating the issue of DTNA's liability for causing the 2012 accident that injured their mother. *Jones*, 336 So.3d at 626, 628-29.

Similarly, *see Webb v. Morella*, 2016-1153 (La. App. 1st Cir. 6/21/17), 224 So.3d 406, 409, applying federal issue preclusion, which mirrors Louisiana's issue preclusion requirements in all pertinent respects.[6] In the Webbs' first suit, the federal district court found that the complaint failed to state a plausible claim for relief and dismissed the Webbs' federal law causes of action. The federal court declined to exercise supplemental jurisdiction over the Webbs' state law claims and dismissed those causes of action without prejudice. 28 U.S.C. §1367; *Webb*, 224 So.3d at 409. After the Webbs filed suit in state court, asserting their state law causes of action, the defendants filed exceptions of *res judicata*, arguing that issue preclusion barred relitigation of the factual issues pertinent to both the federal and state law causes of action. On appeal, this court found that the federal court ruled on factual issues necessary to its ruling on the Webbs' federal law claims, and these factual issues were also necessary to the Webbs' state law claims. *Webb*, 224 So.3d at 411. Because the facts supporting the state law claims were the same as those actually litigated in the prior federal action and the determination of the issues in the prior action was a necessary part of the federal court's judgment, this court concluded that the doctrine of issue preclusion barred the Webbs from relitigating

---

[5] *See Walls v. American Optical Corp.*, 98-0455 (La. 9/8/99), 740 So.2d 1262, 1270 (observing that "the plaintiffs' injury in a wrongful death action occurs when the victim dies" and "the wrongful death action could not arise until the date of the victim's death").

[6] Louisiana Revised Statutes 13:4231 is modeled on federal preclusion doctrine. *Jones*, 336 So.3d at 627. The federal issue preclusion doctrine requires three elements: (1) the issue at stake in the present litigation must be identical to the one involved in the prior action, (2) the issue must have been actually litigated in the prior action, and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that action. *Webb*, 224 So.3d at 410.

the same factual contentions in state court and affirmed the judgment granting the exceptions of *res judicata*. *Webb*, 224 So.3d at 411.

Here, Legacy Vulcan does not assert that Texas Brine's contract-based fraud incidental demand was tried during the Phase 1 trial. As Texas Brine points out, all parties and the trial court agreed that Phase 1 was limited to the issue of liability. Instead, Legacy Vulcan contends that the factual allegations at issue in Texas Brine's contractual fraud claim were conclusively determined during the Phase 1 trial in connection with Texas Brine's affirmative defense asserted against Legacy Vulcan. The evidence attached to Legacy Vulcan's motion for partial summary judgment, in addition to Texas Brine's opposition evidence, supports this contention.

First, during a pre-trial status conference on April 24, 2017, the trial court stated that fraud was a valid defense that Texas Brine was entitled to "put forward" at the upcoming Phase 1 trial. In the August 2017 amended Phase 1 pre-trial order, Texas Brine alleged that Legacy Vulcan intentionally withheld various reports prepared by internal and external consultants and identified Legacy Vulcan's purported fraud as a contested issue of fact to be resolved at trial.

Next, during the Phase 1 trial, Texas Brine offered testimony and documentary evidence, including the consultant reports at issue, to establish that Legacy Vulcan intentionally withheld those reports and evaluations from Texas Brine. Texas Brine's corporate witnesses testified concerning the impact of Legacy Vulcan's actions on the company's operational and contractual decisions.[7] Tellingly, in its opposition to Legacy Vulcan's motion for partial summary judgment, Texas Brine asserted that "ample evidence" exists in the Phase 1 trial record to establish the factual and legal basis for its fraud claims against Legacy Vulcan. Texas Brine then cited Phase 1 trial evidence and testimony that

---

[7] The relevant portions of the transcript from the Phase 1 trial, as it pertains to the facts at issue in this appeal, were attached as exhibits to Legacy Vulcan's motion for partial summary judgment.

13

purportedly established that Legacy Vulcan "systematically" and "fraudulently" withheld "nearly 400 pages of reports" from Texas Brine.

In its written reasons supporting the Phase 1 judgment, the trial court identified various consultant reports provided to Legacy Vulcan and Texas Brine, including a report prepared by Mr. Sevenker for Legacy Vulcan in the 1980s, which warned Legacy Vulcan that the proximity to the edge of the salt dome was the major concern. The trial court noted, "Importantly, the Sevenker reports were not shared with Texas Brine." Nevertheless, the trial court concluded that Legacy Vulcan and Texas Brine, along with Occidental and its affiliates, shared responsibility for causing the sinkhole, citing La. C.C. arts. 2315 and 2317.1.

Finally, on appeal in *Pontchartrain*, 317 So.3d at 740, Texas Brine argued, among other things, that the trial court manifestly erred in failing to assess more fault against Legacy Vulcan based on its fraudulent withholding of information from Texas Brine. To support this assignment of error and its fraud contentions, Texas Brine cited evidence introduced during the Phase 1 trial, which established that Legacy Vulcan withheld consultant reports from Texas Brine. Texas Brine argued that this evidence established Legacy Vulcan's intent to defraud Texas Brine and satisfied the legal elements of fraud, *i.e.*, a misrepresentation of material fact made with intent to deceive, which causes justifiable reliance with resulting injury. Although the *Pontchartrain*, 317 So.3d 715, opinion does not expressly address Texas Brine's fraud assertion, this court did not increase Legacy Vulcan's percentage of fault, only Texas Brine's.

Texas Brine argues that, because the Phase 1 trial did not address its contract-based fraud claims, those claims could not have been conclusively established during that trial. However, this argument ignores the function of issue preclusion – to preclude religiation of *issues* actually adjudicated. Issue preclusion is not concerned with whether a particular *cause of action* was litigated; instead, that is the function of claim preclusion. *See Quatrevingt*, 242 So.3d at 639.

14

Texas Brine does not dispute that the same factual contentions at issue in its affirmative defense of fraud against Legacy Vulcan, *i.e.*, whether Legacy Vulcan fraudulently withheld information and consultant reports, are the same facts at issue in its contract-based fraud cause of action. Nevertheless, we examine two incidental demands filed by Texas Brine in 2016, which set forth the factual basis for its contractual fraud claims against Legacy Vulcan.

In these demands, Texas Brine alleged that, before, during, and after the OG3 was drilled, Legacy Vulcan's consultants produced numerous studies, analyses, and reports, which included evaluations and concerns regarding various aspects of the OG3 and the proximity of edge of the salt dome. Texas Brine asserted that Legacy Vulcan did not provide it with all of these reports and conclusions. As a result of Legacy Vulcan's purportedly "deliberate" withholding of material information and "intentional misrepresentation" concerning the condition of the OG3 and the cavern, Texas Brine alleged that it was prejudiced in its contract negotiations with Legacy Vulcan. Texas Brine further asserted that Legacy Vulcan's "deliberate and systematic failure" to share all material information and analyses "vitiated Texas Brine's consent" to enter into several contracts with Legacy Vulcan from "their inception." Based on Legacy Vulcan's allegedly intentional withholding, Texas Brine sought damages and further sought to nullify its contracts with Legacy Vulcan, asserting that its consent was vitiated by fraud, error, and/or duress.

Thus, it is evident that the same factual allegations and issues that form the basis of Texas Brine's contract-based fraud cause of action against Legacy Vulcan are the same issues that were tried during the Phase 1 trial in connection with Texas Brine's fraud-based affirmative defense and its effort to avoid or reduce its liability for causing the sinkhole.

As the trial court correctly noted in its January 6, 2022, written reasons for granting Legacy Vulcan's motion on issue preclusion, La. C.C. art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." This definition applies whether the fraud cause of action is based in tort or contract. *See Riedel v. Fenasci*, 2018-0539 (La. App. 1st Cir. 12/28/18), 270 So.3d 795, 801 (recognizing that a claim of fraud under Article 1953 generally applies in cases where a contract exists and that both contract and tort-based fraud claims require a misrepresentation, suppression, or omission of true information, an intent to deceive or obtain an unjust advantage, and justifiable reliance by the plaintiff and resulting injury.) "[T]he error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Associates*, 2001-0587 (La. 10/16/01), 798 So.2d 60, 64. We agree with the trial court's conclusion that, whether framed as "contract fraud" or "tortious fraud," the merits of Texas Brine's fraud contentions have been fully litigated.

We also conclude that the determination of the merits of Texas Brine's fraud allegations against Legacy Vulcan was essential to the Phase 1 judgment. Texas Brine concedes that fraud was addressed during the Phase 1 trial "to the extent that [Legacy] Vulcan's intentional withholding of information affected the allocation of fault...." The trial court allocated fault in the Phase 1 judgment now at issue. This allocation included 15% of fault to Legacy Vulcan, which Texas Brine asserts was based, at least in part, on Legacy Vulcan's intentional withholding of reports.

Thus, Legacy Vulcan satisfied its burden of proving all elements of issue preclusion as to Texas Brine's factual fraud allegations. *See* La. C.C.P. art. 966(D)(1).

16

To avoid the effects of *res judicata*, Texas Brine argues that the "exceptional circumstances" exception applies. Louisiana Revised Statutes 13:4232(A)(1) provides that a judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the *res judicata* effect of the judgment. Texas Brine relies on *Kevin Associates, LLC v. Crawford*, 2004-2227 (La. App. 1st Cir. 11/4/05), 917 So.2d 544, 549, *writ denied*, 2006-0220 (La. 5/5/06), 927 So.2d 311, wherein this court recognized that the "exceptional circumstances" exception generally applies to "complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system, to factual situations that could not be anticipated by the parties, or to decisions that are totally beyond the control of the parties." Citing only the "complex procedural situations" language from *Kevin*, Texas Brine asserts that the exception applies here merely because the sinkhole litigation has spanned decades and is divided into multiple phases. We disagree and find that, in this instance, the nature of the litigation alone is not an exceptional circumstance, nor has Texas Brine demonstrated satisfaction of any of the remaining "exceptional circumstance" considerations articulated in *Kevin*.[8]

We are likewise unpersuaded by Texas Brine's argument that the exceptional circumstances articulated in *Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 95-0654, 95-0671 (La. 1/16/96), 666 So.2d 624, 632, are present. There, the Louisiana Supreme Court recognized that exceptional circumstances to the application of *res judicata* include instances where the parties have agreed that the plaintiff may split his claim, or the defendant has acquiesced therein, and the court

---

[8] There is no indication or assertion that Texas Brine was deprived of the opportunity to present its fraud allegations during the Phase 1 trial, either "due to unanticipated quirks in the system" or otherwise. To the contrary, the record before us, in addition to the evidence presented during the Phase 1 trial, as discussed in *Pontchartrain*, 317 So.3d 715, demonstrates that Texas Brine actively and thoroughly litigated its fraud allegations against Legacy Vulcan. Finally, Legacy Vulcan's claim of *res judicata* does not arise out of an unanticipated factual situation or as a result of decisions that were totally beyond the control of the parties. Instead, the parties agreed to try Texas Brine's fraud allegations during the Phase 1 trial.

17

in the first action has expressly reserved the plaintiff's right to maintain the second action. *Terrebonne Fuel & Lube*, 666 So.2d at 632. Texas Brine asserts that the parties and the trial court agreed that Phase 1 would impose only delictual fault, while contract claims between the parties would be reserved for a later phase. Again, this argument ignores the distinction between issue preclusion and claim preclusion.

If the issue before us was whether Texas Brine's contract-based fraud cause of action was barred by *res judicata*, the considerations set forth in *Terrebonne Fuel & Lube*, would be persuasive. However, as we have explained, Legacy Vulcan's motion for partial summary judgment was premised on issue prelusion, which examines whether particular factual *issues* have been litigated, not whether the plaintiff has or should have litigated a particular *cause of action*. The latter consideration is the focus of the claim preclusion principle of *res judicata*, which is not at issue here. *See* La. R.S. 13:4231(1) and (2); *Quatrevingt*, 242 So.3d at 639. There is no evidence that Texas Brine reserved its right, with the acquiescence of the trial court and Legacy Vulcan, to relitigate the *issue* of Legacy Vulcan's fraud, *i.e.*, the same factual contentions, during future trial phases.

Finally, Texas Brine asserts that an exceptional circumstance exists because Legacy Vulcan produced "thousands of pages" of documents following the Phase 1 trial, some of which purportedly bear directly on Texas Brine's fraud contentions. Notably, in *Pontchartrain*, 317 So.3d at 763 n.35, this court denied Texas Brine's motion to stay the Phase 1 appeal due to this post-trial production by Legacy Vulcan and denied Texas Brine's motion for limited remand "regarding reallocation of fault due to newly produced documents by Legacy Vulcan...." We again reject Texas Brine's argument that this production warrants relief from the Phase 1 judgment.

*Assignment of Error No. 2:*

In its second assignment of error, Texas Brine asserts that the trial court misapplied La. C.C. art. 2323(C) as it relates to multiple tortfeasors and invoked this article in granting Legacy Vulcan's motion for partial summary judgment. We disagree with Texas Brine's characterization of the trial court's reliance on Article 2323. It is evident that the trial court, in its consideration of the requirements of issue preclusion, noted that fault was previously allocated pursuant to Article 2323 as further support for its conclusion that it considered and implicitly rejected Texas Brine's fraud contentions against Legacy Vulcan in the Phase 1 judgment.

Additionally, on our *de novo* review and with no reliance on Article 2323(C), we find that Legacy Vulcan carried its summary judgment burden of proof. Upon this successful showing by Legacy Vulcan, the burden shifted to Texas Brine to produce evidence to demonstrate the existence of a genuine issue for trial. *See Aucoin*, 324 So.3d at 632, *citing Hines*, 876 So.2d at 766-67. Texas Brine failed to satisfy this burden. Therefore, Legacy Vulcan's motion for partial summary judgment was properly granted.

## CONCLUSION

For the above reasons, we affirm the January 6, 2022 judgment granting Legacy Vulcan, LLC's motion for partial summary judgment and rendering judgment in favor of Legacy Vulcan and against Texas Brine Company, LLC, dismissing, with prejudice, Texas Brine's fraud and concealment/omission contentions and causes of action against Legacy Vulcan. We deny Texas Brine's writ application. All costs of this appeal are assessed against Texas Brine Company, LLC.

**JUDGMENT AFFIRMED; WRIT DENIED.**

PONTCHARTRAIN NATURAL
GAS SYSTEM, K/D/S PROMIX, L.L.C.
& ACADIAN GAS PIPELINE SYSTEM

STATE OF LOUISIANA

COURT OF APPEAL

VERSUS

FIRST CIRCUIT

TEXAS BRINE COMPANY, LLC

2022 CA 0594



**HOLDRIDGE, J., concurring.**

I respectfully concur with the opinion. I find in this case it is appropriate for this court to decide this appeal of a partial summary judgment in accordance with La. C.C.P. art. 1915(B). In a recent appeal, I wrote a concurring opinion to emphasize that the Louisiana Supreme Court case of **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122, mandates a policy against the piecemeal litigation and multiple appeals that have been taken from partial judgments involving the 2012 Assumption Parish sinkhole litigation. **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2022-0738 (La. App. 1 Cir. 12/29/22), ___ So.3d ___, ___ (2022 WL 17983139 at **1) (Holdridge, J., concurring). By following **Messinger**, this court found that the trial court improperly certified a La. C.C.P. art. 1915(B) judgment and had no jurisdiction to consider the appeal from a partial judgment. **Pontchartrain Natural Gas System**, ___ So.3d at ___ (2022 WL 17983139 at **6-7). It is important for this court and the trial court to operate under the principle of sound judicial administration to promote judicial efficiency and economy, neither of which have been present in the sinkhole litigation. **Pontchartrain Natural Gas System**, ___ So.3d at ___ (2022 WL 17983139 at **1).

In contrast, this matter involves the question of whether the issue preclusion principle of res judicata should apply. Normally, the issue involved in this appeal as to whether a matter has already been tried would not arise since all parties would clearly know what issues were to be tried at the trial on the merits. Unfortunately,

the parties in this case cannot agree as to whether Texas Brine's fraud and concealment/omission contentions were totally tried in the Phase I trial and can no longer be tried in any other phase of the trial based on the issue preclusion principle of res judicata. The parties cannot now complain to this court since they failed to reach a clear and concise stipulation as to exactly what issues would be tried in the four phase system they created. The trial court, and not this court, is the best forum to decide whether issue preclusion would prohibit Texas Brine from raising its fraud and concealment/omission contentions due to the parties' different legal relationships in each phase of this four trial system agreed upon by the parties. Therefore, I concur in the result reached by the majority.